PEOPLE of the State of Illinois ex rel. Michael J. BAKALIS, Superintendent of Public Instruction, State of Illinois, Plaintiffs,

and

The State of Texas et al., Plaintiffs-Intervenors,

v.

Casper W. WEINBERGER, Secretary of the Department of Health, Education & Welfare,

and

John R. Ottina, Acting Commissioner of Education, Department of Health, Education & Welfare, Defendants.

No. 73 C 1642.

United States District Court, N. D. Illinois, E. D.

Nov. 30, 1973.

722

William G. Scott, Atty. Gen., Allen D. Schwartz, Asst. Atty. Gen., Bernard Genis, Chicago, Ill., for plaintiffs.

William C. Bednar, Jr., Austin, Tex., for the State of Tex. and J. W. Edgar.

Jerome N. Robbins, Chicago, Ill., for the State of Mo., and B. Bartlett.

George L. McCargar, Asst. Atty. Gen., Lansing, Mich., for the State of Mich.

Julian C. Smith, Jr., Asst. Atty. Gen., Carson City, Nev., for the State of Nev.

James Thompson, U. S. Atty., and Sheldon Waxman, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

LYNCH, District Judge.

The above captioned case has come before this Court on plaintiffs' motions for summary judgment and plaintiffs' motions for permanent injunction. The Court has considered all the pleadings and briefs filed by the parties and has heard arguments of counsel and has concluded that there is no dispute as to any genuine issue of material fact that the plaintiffs, the State of Illinois, the State of Texas, the State of Nevada, the State of Michigan and the State of Missouri are entitled to a judgment as a matter of law.

## I—NATURE OF THE ACTION

In this action plaintiffs seek to compel the Secretary of the Department of Health, Education and Welfare and the Acting Commissioner of the Office of Education to allot, allocate and otherwise make available for disbursement and distribution to plaintiffs and plaintiff-intervenors the full amount of monies which were appropriated by Congress for funding under Title III–A of the

National Defense Act of 1958, as amended, 20 U.S.C. Sections 441–445 (hereinafter, the Act). It is agreed that it was the intent of this Act to create a program of federal financial assistance to state and local educational agencies for the acquisition of special equipment for public elementary and secondary education in academic subjects, the minor remodeling of laboratory or other space used for such equipment and for other specified purposes.

Pursuant to 20 U.S.C. Section 441, authorization is provided for the appropriation of funds for the operation of the programs contemplated by Title III of the Act. This section was amended in 1972 by Public Law 92–318 to provide the authorization for the appropriation of $140,500,000 for the fiscal year ending June 30, 1973. The appropriation pursuant to this authorization was effectuated by Public Law 92–334, Section 101(d), 86 Stat. 404, as amended, which appropriates

> Such amounts as may be necessary for continuing the following activities, but at a rate for operations not in excess of the current rate * * *
>
> (4) aid to land-grant colleges, grants for construction of undergraduate facilities, undergraduate instruction equipment, equipment and minor remodeling, and research and development for which provision was made in the Office of Education Appropriation Act, 1972.

The current rate, that contained in the Office of Education Appropriation Act, 1972, P.L. 92–48, 85 Stat. 103, is $50,000,000.

From the sums appropriated, the Commissioner is authorized to withhold up to 16% to achieve the purposes of the Title in the territories, overseas dependents schools and schools operated for Indian children, (20 U.S.C. Section 588) and for loans to private schools (20 U.S.C. Section 445). The remainder of such sums is available for allotment by the Commissioner of Education who allots to each state, pursuant to a formula set forth in the statute, the amount of funds it is eligible to receive under the program.

Any state which desires to receive payments under the program must file a plan, comporting with the requirements of 20 U.S.C. Sections 443 and 584, with the Commissioner. If the plan meets the requirements of these sections the Commissioner is to approve it and the state is then eligible to receive payments pursuant to 20 U.S.C. Section 442.

■ The plaintiffs have submitted, and the Commissioner has approved, those plans as required by 20 U.S.C. Section 443. The Commissioner determined that from the sums appropriated, after taking into consideration the provisions for reserves, $2,000,000 should be allotted to the states. These funds would be sufficient only to maintain the state offices which administer the program. Plaintiffs contend, and this Court hereby rules, that they should have received their respective shares of the 84% of the $50,000,000 which should have been allotted among the states.

## II—JURISDICTION

■ The Court cannot agree with the government's reasoning that it is without jurisdiction. It has federal question jurisdiction under 28 U.S.C. Section 1331. Defendants' answer admits that there is over $10,000 in controversy and the complaint discloses substantial claims founded directly upon statutes of the United States. See State Highway Commission of Missouri v. Volpe, 479 F.2d 1099 (8th Cir., decided April 2, 1973). The independent jurisdictional ground provided by 28 U.S.C. Section 1331, together with what this Court holds to be the non-discretionary statutory provisions which are at issue in the present lawsuit, gives this Court jurisdiction under the Administrative Procedure Act, 5 U.S.C. Section 701 et seq. See Berends v. Butz, 357 F.Supp. 143, 149–156 (D. Minn.1973); Commonwealth of Pennsylvania v. Weinberger, Civil Action No. 1125–73 (D.D.C. June 28, 1973). Juris-

diction is also properly predicated upon mandamus under 28 U.S.C. Section 1361 since the plaintiffs properly allege that defendants are refusing to perform an official action where "the duty in the particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command." In the instant case, plaintiffs are properly seeking to compel the defendants to perform what the Court finds to be a ministerial duty under the Act. See Commonwealth of Massachusetts v. Weinberger, Civil Action No. 1308–73 (D.D.C. July 26, 1973.)

### III—SOVEREIGN IMMUNITY

The government asserts that the present suit is barred by the doctrine of sovereign immunity because the judgment sought by the plaintiffs would expend itself on the public treasury by requiring defendants to allot monies belonging to the United States. Since the United States is an indispensible party to such a suit involving the disposition of its funds, and since the United States has not consented to be sued under such circumstances, this Court purportedly lacks jurisdiction to grant the relief sought by plaintiffs and the suit must be dismissed.

█ The Court does not concur in this assertion. Congress, not the plaintiffs, appropriated the educational funds in issue and directed them to be expended. As this Court noted in Trigona v. Ruchelshaus, No. 72 C 3044 (N.D.Ill. July 9, 1973) where defendant raised the doctrine of sovereign immunity as a bar to a claim similar to that being litigated here:

> * * * plaintiff is seeking a judicial determination that would require the Administrator to perform what plaintiff alleges to be a purely ministerial duty under the Act. (Viz. that of allotting—and thus making available for obligation—the sums authorized to be appropriated by Section 207 of the Act.)

Plaintiffs seek only, as did the plaintiffs in the *Trigona* case, to require defendants to perform their duty under the Act to *allot* to the states $48,000,000 for Fiscal Year 1973. 20 U.S.C. Section 443 clearly distinguishes between the allotment process, which is a mandatory duty of the Commissioner, and payments to a state, which can occur only upon the Commissioners' approval of a qualifying state plan.

Additionally, the government has consented to suits of this nature by virtue of the Administrative Procedure Act [APA], 5 U.S.C. Section 551 et seq. Pursuant to 5 U.S.C. Section 702, "a person suffering legal wrong because of agency action, within the meaning of a relevant statute, is entitled to judicial review thereof." The rights of states to bring suits against federal agencies and officials under the APA has previously been established. See Estrada v. Ahrens, 296 F.2d 690, 698 (5th Cir. 1961) where the Court stated:

> By providing judicial review in an action brought by "any person adversely affected or aggrieved by any agency action" Congress permitted suits which under established tests would certainly be barred as suits against the govenment. . . The Act thereby makes a clear waiver of sovereign immunity in actions to which it applies.

Neither of the exceptions of Section 701(a) of 5 U.S.C. are applicable here. No statute precludes judicial review, nor do defendants have discretion with regard to the allotment of sums appropriated for purposes of this program.

### IV—POLITICAL QUESTION

It is contended by the government the question raised is one between coordinate political branches of the Federal Government, and does not present a justiciable controversy which would be necessary for the exercise of judicial intervention. They claim that the relief sought by plaintiffs would require the Court to interfere in the relationship between the legislative branches. Finally the government infers that Courts are not withstanding the pressures of the

current times "by refusing to act precipitously on an issue, the resolution of which other courts have undertaken without giving sufficient reflection on the grave effect their rulings will have on the political system in this country for generations to come." (Government's Brief in Opposition to Plaintiffs' Motions for Preliminary Injunctions, p. 22).

■ The Court finds no merit to the government's argument. This Court is not being asked to render a decision on the admittedly broad issue of the Executive's power to control the rate of expenditure of funds, but instead is presented with a narrow question of statutory interpretation: Did Congress intend to require plaintiffs to allot among the States the full amount appropriated for the Act for Fiscal Year 1973?

There are "judicially discoverable and manageable standards" (Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962)) to guide the Court in both the overall language and the legislative history of the Act in determining the intent of Congress with respect to the existence of discretion in the Commissioner to refuse to allot among the States funds appropriated for this program. As has been succinctly stated in Stark v. Wickard, 321 U.S. 288, 309–310, 64 S.Ct. 559, 571, 88 L.Ed. 733 (1944):

> When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority enforcement entrusted to administrative bodies only to the extent necessary to protect justiciable individual rights against administrative action fairly beyond the granted powers. The responsibility of determining the limits of statutory grants of authority in such instances is a judicial function entrusted to the Courts by Congress by the statutes establishing courts and marking their jurisdiction.

## V—MERITS OF THE CASE

Since this Court has determined that it has jurisdiction, it will now turn to the merits. The parties are in agreement that the plans which were previously submitted have been approved by the Commissioner. There is also agreement that despite the submission of approval plans, plaintiffs have not received matching funds for the purchase of equipment and minor remodeling as provided by Title III–A of the Act because plaintiffs have allotted only two million dollars out of what is alleged to be a fifty million dollar appropriation. This amount would be sufficient to maintain the staffs who would administer Title III–A grants if there are any grants to be administered.

■ The statute which is at issue in the present lawsuit, 20 U.S.C. Section 442, provides, in pertinent part, as follows:

> (a)(1) From the sums appropriated pursuant to the first sentence of § 441 of this title for any fiscal year the Commissioner shall reserve such amount, but not in excess of 3 per centum thereof, as he may determine for allotment as provided in § 588(A) of this title, and such amount, not in excess of 1 per centum thereof, as he may determine for allotment as provided in § 588(B) of this title, and shall reserve 12 per centum for loans authorized in § 445 of this title. *From the remainder of such sums* the Commissioner *shall* allot to each State an amount which bears the same ratio to the amount of such remainder as the product of * * *. [Emphasis added]

The plaintiffs' Complaint alleges that this language is mandatory and, therefore, the Commissioner of Education is required to allocate to the various States all of the funds appropriated pursuant to the statute. The defendants, on the other hand, argue that by the use of the phrase "From the remainder of such sums," Congress intended to allow the

Commissioner to use his discretion in allotting the funds.

After a careful reading of the legislative history and an analysis of the statute in question, this Court holds that the allotment to the States is a ministerial, mechanical, non-discretionary act. Subsection (a) allows the Commissioner to reserve up to 3% for allotment to United States territories, up to 1% for allotment to the Secretaries of Defense and Interior (Sec. 588), and 12% for loans to non-profit private schools (Sec. 445) from the "sums appropriated pursuant to the first sentence of Section 441." The residue, 84% or more of the appropriation, must be allotted to the States in amounts derived by application of a mathematical formula set out in detail in the statute.

Further support of this interpretation is provided when these sections are compared with permissive provisions found elsewhere in the Act. Section 445 states that the Commissioner "is authorized to make loans" to private non-profit schools, that he "*may*" if four criteria are satisfied. (Emphasis added).

■■■ This Court is unable to accept the defendants' assertion that the action by the President is proper pursuant to Article II of the Constitution. Section I of Article II provides that "the executive power shall be vested in the President . . ." and Section 3 of Article II requires that the President "shall take care that the laws be faithfully executed." Rather this Court feels that defendants' attention should be drawn to a different provision of the Constitution. Article 1, Section VII states that after a bill passes both Houses, it shall "be presented to the President . . . ; If he approves it he shall sign it, but if not he shall return it, with his objections." The President signed Public Law 92–334 and its subsequent amendments into law, thereby constitutionally approving them. His legislative power over Fiscal Year 1973 appropriation for the program in suit has come to an end. While this Court may not disagree with the objectives of the President to control spending, it is unable to find any authority either in Article II of the Constitution or in case law for the means by which he seeks to effectuate this policy. Defendants argue that the President has power to withhold appropriated funds by virtue of long-standing Congressional acquiescence to such a practice. Even if this practice has previously existed, the Court finds no merit to this argument. As the Supreme Court stated in Powell v. McCormack, 395 U.S. 486, 547, 89 S.Ct. 1944, 1977, 23 L.Ed.2d 491 (1969): "That an unconstitutional action has been taken before surely does not render that same action any less constitutional at a later date."

Finally, as to defendants' argument that Congress conferred on them the discretion they claim to possess by virtue of the Anti-Deficiency Act, 34 Stat. 49, as amended, 64 Stat. 765, 31 U.S.C. Sec. 665(c), the Budget and Accounting Act of 1921, 42 Stat. 20, 31 U.S.C. Sec. 1 et seq. and the Employment Act of 1946, 60 Stat. 23, 15 U.S.C. Sec. 1021 et seq. this Court finds nothing, either in the language or legislative history of these statutes which supports defendants' position. See Commonwealth of Massachusetts v. Weinberg, Civil Action No. 1308–73 (D.D.C. July 26, 1973).

## VI

An Order consistent with this opinion has been entered.

## ORDER

It is hereby ordered, adjudged and decreed:

1. That the Court has jurisdiction of the parties and the subject matter and that there is proper venue;

2. That plaintiffs' motion for summary judgment and plaintiffs' motions for permanent injunctions be and are hereby granted;

3. That the National Defense Education Act of 1958, as amended, Title 20 United States Code, Section 441 et seq., requires the defendant, Commissioner of Education, to allot among the states, for the fiscal year 1973, the amount of fifty million dollars, which sum was ap-

propriated by Congress in 101(d) of P.L. 92–334 as amended by P.L. 92–390, P.L. 92–446, P.L. 92–571 and P.L. 93–9. The plaintiffs are hereby permitted to forthwith obligate and expend the funds previously allotted and released to them pursuant to the orders of this Court of June 27, 1973, June 29, 1973 and June 30, 1973;

4. That the defendants shall allot, allocate and pay said sums in accordance with said statute;

5. That the funds allotted to plaintiffs pursuant to the orders of this Court entered June 27, 1973, June 29, 1973 and June 30, 1973 shall continue to remain available until totally expended. Said funds being particularly described as follows, or such other sums as may be determined through application of the allotment formulae contained in Title 20 U.S.C. Section 442, to be plaintiffs' share of the aforesaid appropriated sum of Fifty Million Dollars ($50,000,000):

| State | Amt. ($) | Com. Actg. # | Eff. Date | Ref. Code | Obj. Doc. # | Obj. Class |
|-------|----------|--------------|-----------|-----------|-------------|------------|
| Illinois | 2,057,975 | 32000526 | 06 29 73 | 331 | 021012 | 4115 |
| Michigan | 2,163,491 | 32000526 | 06 29 73 | 331 | 021021 | 4115 |
| Missouri | 1,077,378 | 32000526 | 06 29 73 | 331 | 021024 | 4115 |
| Nevada | 95,440 | 32000526 | 06 29 73 | 331 | 021027 | 4115 |
| Texas | 3,147,850 | 32000526 | 06 29 73 | 331 | 021042 | 4115 |

6. That this Order is hereby stayed to and including November 27, 1973;

7. That any memorandum of decision hereafter filed by this Court shall be incorporated in and become a part of this Order;

8. That plaintiffs shall have their costs of action as prescribed by law.