**COMMONWEALTH OF PENNSYLVANIA, By William SHEPPARD, Insurance Commissioner, et al., Appellants,**

v.

**NATIONAL ASSOCIATION OF FLOOD INSURERS, an Unincorporated Association, et al., Appellees.**

No. 74–1894.

United States Court of Appeals, Third Circuit.

Argued March 20, 1975.

Decided June 13, 1975.

14

Kathleen Herzog Larkin, Deputy Atty. Gen., Lawrence Silver, Deputy Atty. Gen., Chief, Litigation Div., Israel Packel, Atty. Gen., Dept. of Justice, Harrisburg, Pa., for appellants.

John G. Harkins, Jr., Philadelphia, Pa., Fred Speaker, Harrisburg, Pa., Marjorie G. Marinoff, Charles J. Bloom, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees, National Flood Insurers Ass'n, General Accident Fire and Life Assurance Corp., Ltd., and Zurich Ins. Co.

Carla A. Hills, Asst. Atty. Gen., S. John Cottone, U. S. Atty., Robert E. Kopp, David M. Cohen, Attys., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for Federal appellees.

Before ALDISERT, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the decision of the district court dismissing its complaint.[1] As to all but one count of

---

1. For all intent and purposes, the Commonwealth of Pennsylvania is the real party in interest in this action even though the plaintiffs are denominated as follows:

the complaint, we affirm the district court;[2] as to that count of the complaint which seeks mandamus relief against the federal defendants, we reverse and remand to the district court for a hearing.

The Commonwealth, on relation of its Commissioner of Insurance, its Secretary of the Department of Community Affairs and its Attorney General, instituted suit in the district court seeking declaratory and injunctive relief, mandamus [2a] and money damages against defendants National Association of Flood Insurers,[3] James T. Lynn, Secretary of Housing and Urban Development and the United States of America (collectively referred to as the "federal defendants"). The gravamen of the complaint was that the defendants had failed to publicize in Pennsylvania the availability of flood insurance prior to the occurrence of the 1972 and 1973 floods and that consequently the properties damaged by the floods were uninsured. The Commonwealth sought an award of damages in excess of one billion dollars.

The Commonwealth also sued in the capacity of *parens patriae* and as a representative of a class comprised of all citizens and residents of Pennsylvania who sustained uninsured flood damage.[4]

Count I of the Commonwealth's three count complaint alleged that all defendants failed to perform obligatory statutory duties required by the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq.* Count II alleged a breach of the agreement between the Secretary of HUD, and the Flood Insurers. The agreement was allegedly entered into for the purposes of providing flood insurance and of having a pool of private insurance companies and the federal government share financial responsibility for the payment of claims arising from insured losses under the flood insurance program. The Commonwealth alleged that both it and its citizens are third-party beneficiaries of this agreement and, as such, may properly maintain a claim based on its breach by the defendants. The third

Commonwealth of Pennsylvania, by William Sheppard, Insurance Commissioner; William H. Wilcox, Secretary of the Department of Community Affairs and Israel Packel, Attorney General, and Commonwealth of Pennsylvania upon the relation of and as representative of Thomas S. Doty, Bernice Rabin, Walter S. Kinns, Jr., Martha W. Dancheck and Marilyn Saidman, and *All Others Similarly Situated,*
 See also note 6, *infra.*

2. Although we affirm all but one count of the district court's order, our affirmance is, in part, for reasons other than those articulated by the district court. PAAC v. Rizzo, 502 F.2d 306 (3d Cir. 1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975).

2a. Mandamus was sought against the federal defendants. Mandamus was also sought against the Flood Insurers, on the unpleaded theory that they allegedly had statutory obligations which would support mandamus relief. In view of our disposition of this theory, we do not reach any issue of mandamus concerning the Flood Insurers.

3. The complaint erroneously referred to the National Flood Insurers Association as the National Association of Flood Insurers. The National Flood Insurers Association is an unincorporated association of approximately 100 insurance companies. The Commonwealth

also named as defendants two members of the Association (General Accident Fire and Life Assurance Corporation and Zurich Insurance Company) as purported defendant class representatives of each individual member insurance company. The district court did not dispose of the Commonwealth's attempt to join a defendant class inasmuch as the district court held that the Commonwealth's complaint against the two member insurance companies, purportedly named as representatives of a defendant class, did not state claims upon which relief could be granted. Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers, 378 F.Supp. 1339, 1342 n. 3 (M.D.Pa.1974). We refer to the defendant Association and the two member defendants of the Association collectively as the Flood Insurers.

4. The Commonwealth also alleged that it brought suit on its own behalf as a subrogor on the unpleaded theory that it incurred expenses in providing monetary flood relief to Pennsylvania citizens and residents (Complaint ¶ 5(a) at App. 9a).
 The Commonwealth's assertion of a "subrogor" capacity to sue, as well as its assertion that it sues in its *parens patriae* capacity and upon the relation of its Insurance Commissioner and Secretary of Community Affairs, were not ruled upon by the district court by reason of its dismissal of the complaint on other grounds. 378 F.Supp. at 1342 n. 5.

and last count of the complaint sought equitable relief in the nature of an injunction, specific performance and mandamus to insure that the defendants would carry out their statutory and contractual duties.

Subsequent to the filing of the complaint, all defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12. The district court granted the motions to dismiss all three counts of the complaint against both the Flood Insurers and the federal defendants on the grounds that subject matter jurisdiction was lacking as to the federal defendants, Fed.R.Civ.P. 12(b)(1), and that the complaint failed to state a claim upon which relief could be granted as to the Flood Insurers.[5] Fed.R.Civ.P. 12(b)(6). The Commonwealth has timely appealed.[6]

## I. STATUTORY SCHEME

This action arose as a consequence of the damages to property suffered by the Commonwealth and its citizens and residents following Hurricane Agnes in 1972 and from widespread flooding and mud slides in 1973. The Commonwealth asserted in its complaint that the losses incurred were insurable under the National Flood Insurance Act of 1968 which, but for the acts and omissions of the defendants, would have provided flood insurance coverage and thereby compensation for the damage suffered.

The National Flood Insurance Act of 1968, which underlies the Commonwealth's tort (Count I) and contract (Count II) claims, establishes a legislative scheme to make flood insurance available, principally by private insurers,[7] in high-risk, high-rate areas.

---

5. As to the Flood Insurer defendants:

(1) Count I, alleging a tortious failure to perform the statutory duties of publicity, was dismissed for failure to state a claim upon which relief could be granted in that the district court concluded that The National Flood Insurance Act imposed no duty, direct or implied, upon the private flood insurers.

(2) Count II, alleging a breach of contract, was dismissed on the alternative grounds that the private flood insurers' agreement with HUD imposed no contractual obligation upon the Flood Insurers to publicize the availability of flood insurance; but if a contractual obligation did exist, plaintiffs had no standing to sue for breach of such an obligation as the plaintiffs were not third-party beneficiaries.

(3) Count III, seeking equitable relief, was dependent upon Counts I and II. The dismissal of the substantive allegations of Counts I and II compelled dismissal of Count III.

As to the federal defendants:

(1) Count I, the tort claim allegation, was dismissed on the grounds that the district court lacked subject matter jurisdiction, see Fed.R.Civ.P. 12(b)(1), in that the Commonwealth failed to comply with the jurisdictional prerequisites of The Federal Tort Claims Act, 28 U.S.C. § 1346(b). The Commonwealth had failed to submit a sufficient administrative claim to HUD as required by 28 U.S.C. § 2675(a).

(2) Count II, the breach of contract claim, was dismissed for lack of subject matter jurisdiction. The district court held that as an action brought pursuant to the Tucker Act, 28 U.S.C. § 1346(a), the relief sought exceeded the maximum allowable claim for damages of $10,000.00.

(3) Count III, against the federal defendants sought equitable relief, including mandamus, and was dismissed as the district court held that the complaint did not allege the failure to perform a purely ministerial act.

6. This appeal is not brought as a class action. Defendants' Rule 12 motions to dismiss were granted prior to the determination of a class. Indeed, the Commonwealth entered into stipulations with both the federal and Flood Insurer defendants that a motion for class designation would not be filed until the motions to dismiss were decided. Record, Document Nos. 19 and 24, Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers, 378 F.Supp. 1339 (M.D.Pa.1974).

7. Both the Senate and House Reports reveal a congressional intent to implement the Act largely through the facilities and resources of private insurance companies with government assistance and participation. As stated in the House Report:

The facilities of the private insurance industry would be fully utilized in carrying out the program. Private insurance companies could either assume a portion of the risk in carrying out the program or could participate on a nonrisk basis. Risk-sharing companies would commit risk capital to an industry pool of companies which would absorb a share of the losses and expenses of the program. The Federal Government

The Act provides that flood insurance is to be made available only in those states or political subdivisions which have adopted adequate land management policies concerning flood control, flood zoning and flood damage prevention. 42 U.S.C. §§ 4012(c), 4014(e), 4101–02. The Act establishes guidelines within which the Secretary is granted broad and flexible authority to implement its provisions. For example, the Secretary is authorized to determine the priorities for insurance coverage, the manner in which insurance premiums are to be set, the mechanics of funding, the methods of paying claims, the limitations on payments and on the total amount of outstanding coverage, and the extent of federal financial subsidies for the insurance premiums. *See* 42 U.S.C. §§ 4012–4027; 1968 U.S.Code Cong. & Admin.News pp. 2967–73. Of major importance here, the Act also provides that flood insurance information be disseminated. 42 U.S.C. § 4020. As with the other statutory provisions in the first Subchapter of the Act,[8] § 4020 speaks only as to what the Secretary is authorized to do.[9]

Under the Act, 42 U.S.C. § 4041, the Secretary is first directed to implement the program by encouraging the formation of a pool of private insurance companies. The Secretary is then authorized to enter into an agreement with this insurance pool to make flood insurance policies available to the public with premiums subsidized by federal funds. 42 U.S.C. §§ 4041, 4051, 4052. The members of the insurance pool are to sell the insurance, adjust and pay claims and provide risk capital. 42 U.S.C. §§ 4052, 4053. The Secretary is authorized to make payments to the pool to subsidize premium rates and can make arrangements for reinsurance of the pool in case of excessive loss. 42 U.S.C. § 4055. Under this statutory scheme flood insurance has been available since 1969, the year in which the implementation agreement was executed.[10] *See* App. 34a–50a.

---

would make premium equalization payments to the pool to cover losses and also would provide re-insurance coverage to the pool for excessively high losses. Insurance companies in the pool would pay a premium to the Government for this re-insurance coverage in years of low-flood losses. Other non-risk-bearing insurance companies would participate in the program as fiscal agents of the pool.
H.R.Rep.No.1585, 90th Cong., 2nd Sess. 90 (1968); *See* S.Rep.No.1123, 90th Cong., 2d Sess. 102 (1968), U.S.Code Cong. & Admin. News 1968, p. 2966.

A second objective of the Act other than to make flood insurance available to private individuals was to encourage the restriction of the development of land exposed to flood hazards. *See* 42 U.S.C. §§ 4001(e), 4002(b)(3). Procedures designed to implement this purpose are not, however, at issue in this appeal.

8. The National Flood Insurance Act, as amended 42 U.S.C. §§ 4001–4128, is organized into four subchapters. Subchapter I, encompassing sections 4011–4027 of Title 42, United States Code, is entitled "The National Flood Insurance Program" and provides for the program's overall structure and establishes guidelines for the Secretary's management of the program. Subchapter II, 42 U.S.C. §§ 4041–4084, focuses on the implementation and administration of the program. Subchapter III, 42 U.S.C. §§ 4101–4107, sets forth provisions for the development and classification of land located in flood-prone areas and for appeals of such classifications. Subchapter IV, 42 U.S.C. §§ 4121–4128, establishes definitions and general provisions.

The Act became law on August 1, 1968, Pub.L. 90–448, 82 Stat. 572, and was last amended on December 31, 1973, Pub.L. 93–234, 87 Stat. 975. As so amended, the Act provides that the flood insurance program for new policies is to terminate on June 30, 1977. 42 U.S.C. § 4026.

9. 42 U.S.C. § 4020 provides:

§ 4020. Dissemination of flood insurance information

The Secretary shall from time to time take such action as may be necessary in order to make information and data available to the public, and to any State or local agency or official, with regard to—
(1) the flood insurance program, its coverage and objectives, and
(2) estimated and chargeable flood insurance premium rates, including the basis for and differences between such rates in accordance with the provisions of section 4015 of this title.

10. In the event that a feasible program could not be developed based upon a pool of private insurers, Congress provided for an alternative program under federal control with only an incidental role for private insurers. 42 U.S.C.

Under the agreement between the Secretary and the Flood Insurers, the Flood Insurers undertake to "exercise [their] best efforts to provide a continuous program of flood insurance pursuant to the Act and the terms of [the] agreement."[11] More particularly, the Flood Insurers are to "use [their] best efforts to arrange for the issuance of policies of flood insurance to any person or organization qualifying for such coverage . . . pursuant to applications submitted by any such person or organization. . . ."[12]

Article VI of the Agreement requires that the Flood Insurers keep records "which fully disclose the total cost of the program undertaken or services being rendered . . .,"[13] and mandates periodic reports on the operation of the program.[14] The agreement defines "operating costs" as "all costs for an accounting period incurred in the offering, selling, and servicing of policies of flood insurance. . . ."[15]

In addition to the Act and the agreement, the flood insurance program is governed by the HUD regulations. In pertinent part, the regulations establish a degree of state participation whereby among other state directed activities the state is to provide local communities with information on the program. 24 C.F.R. § 1910.25. Such information is to be provided to assist communities to become qualified in order for subsidized flood insurance policies to be sold to parties within their respective jurisdictions.

## II. THE FLOOD INSURERS

Regardless of the capacity in which the Commonwealth sues, we agree with the district court that as against the Flood Insurers, Count I (statute), II (con-

tract), and III (equitable relief) of the complaint fail to state a claim upon which relief can be granted.

■ Count I alleges that plaintiffs' injuries were incurred by the Flood Insurers' tortious conduct. It is alleged that the Flood Insurers failed to perform or negligently performed their statutory obligations to publicize the availability of flood insurance. To succeed under this Count, it must appear that such statutory duties are indeed imposed upon the Flood Insurers. Our analysis of the statute reveals no statutory obligation, express or implied, imposed upon the Flood Insurers to publicize the availability of flood insurance. The obligations under the Act are those required of the Secretary in all instances. Indeed, in the very first instance the Secretary must determine the feasibility of a program which relies principally upon private insurance companies. See 42 U.S.C. § 4071 and note 10 supra.

Moreover, although the statute defines the Flood Insurers' reimbursable operating costs to include expenses "incurred in connection with selling and servicing flood insurance coverage", 42 U.S.C. § 4018(b)(1)(A) (emphasis supplied), we do not read this provision as imposing a statutory duty to publicize and we have been shown no legislative history which would support such a construction. Count I was properly dismissed.

■ We also agree with the district court's analysis that the Flood Insurers are under no contractual obligation to "publicize" as is alleged in Count II. The contractual provisions are clear and unambiguous in this respect. Although broader than the statutory definition of reimbursable expenses in that the contract allows for reimbursement for the

§§ 4071–4084. Prior to the establishment of the alternative (federally controlled) program, the Secretary must first determine and then report to Congress that the private-insurer pool program is not feasible. 42 U.S.C. § 4071(b). To date, such a determination and report has not been made and hence the federally controlled program is not relevant to this discussion.

11. Contract Agreement, Art. I, Par. 3; App. 35a.

12. Id., Art. II, Par. 1; App. 36a.

13. Id., Art. VI, Par. 1; App. 40a.

14. Id., Art. VI, Par. 3; App. 40a.

15. Id., Art. VIII, Par. 8; App. 42a.

"offering, selling and servicing of policies", we do not find that the inclusion of the term "offering" in that context imposes an affirmative obligation to publicize. Indeed when the contract is read in its entirety, as we must read it, the Flood Insurers' activities and obligations commence only after an application for insurance has been submitted.[16] *See* Contract Agreement, Art. II, Par. 1; App. 36a. Even if we were to adopt the Commonwealth's argument that the Flood Insurers have a *right* to reimbursement of expenses incurred in publicizing the program, *see* Commonwealth's Brief at 28–29, that arguable right to reimbursement creates neither an obligation to perform nor a duty to expend.[17] Count II, therefore, was properly dismissed.

The district court was correct in holding that the substantive counts (I and II) against the flood insurer defendants failed to state a claim upon which relief could be granted because neither statutory nor contractual obligations to publicize were imposed upon them. It therefore follows that there exists no basis for equitable relief. Accordingly, as against the Flood Insurers, Count III was also properly dismissed.

### III. FEDERAL DEFENDANTS

In analyzing the claims against the federal defendants, the district court did not reach the merits of the Commonwealth's complaint as it held that the Commonwealth failed to satisfy the threshold requirements of subject matter jurisdiction.

Count I of the complaint against the federal defendants sought to hold them liable under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. It was alleged that the federal defendants were statutorily obligated to make flood insurance information available but that they had not done so. It was further alleged that as a result of this breach the " . . plaintiff and those it represents have suffered damage because had defendants performed their statutory duties, large segments of the public . . . would not have suffered uncompensated flood losses from 1972 to the present date." Complaint, Par. 46; App. 26a. This Count was dismissed for failure of the Commonwealth to satisfy the jurisdictional requirements of the Federal Tort Claims Act, in that no adequate claim was first presented to HUD. 378 F.Supp. at 1344.

The Act in pertinent part prohibits the institution of any suit based upon the alleged commission of a tort by the United States unless

. . . the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

28 U.S.C. § 2675(a). The requirements for an initial presentation of a claim in specific amount to the appropriate federal agency and a final denial of that claim are prerequisites to suit under the Act. 28 U.S.C. § 2675(a). Accordingly, pursuant to § 2675(a) both the Department of Justice, 28 C.F.R. § 14.1 *et seq.,* and the Secretary, 24 C.F.R. § 17.1, *et seq.,* have established regulations prescribing the procedures by which administrative claims are to be presented. Although the purpose of the Federal Tort

16. We reject the Commonwealth's construction of the contract that affirmative duties are imposed upon the Flood Insurers *prior* to the submission of applications because the Agreement commits the Flood Insurers to provide a "*continuous program* of flood insurance pursuant to the Act. . . ." Contract Agreement, Art. I, Par. 3; App. 35a (emphasis supplied). This section appears under Article I of the agreement, which defines the obligations of Flood Insurers to each other, rather than their obligations to third parties. Further, the generality of the section gives no content to the Commonwealth's argument.

17. Inasmuch as our analysis of the statute and contract reveals no duty imposed upon the Flood Insurers which could arguably have been breached under the circumstances as alleged in the complaint, we need not reach the question of whether the contract between the Secretary and the Flood Insurers created actionable third party rights enforceable by the Commonwealth.

Claims Act is essentially remedial,[18] the procedures established pursuant to the Act nonetheless have been strictly construed inasmuch as the Act constitutes a waiver of sovereign immunity. *Melo v. United States,* 505 F.2d 1026 (8th Cir. 1974); *Best Bearings Co. v. United States,* 463 F.2d 1177, 1179 (7th Cir. 1972); *Bialowas v. United States,* 443 F.2d 1047 (3d Cir. 1971).

The procedures promulgated by both the Department of Justice and the Secretary are identical and provide, *inter alia,* that the claim for damage to property must be presented (1) by written notification, 28 C.F.R. § 14.2(a); 24 C.F.R. § 17.2; (2) from the owner of the property or the owner's duly authorized agent or legal representative, 28 C.F.R. § 14.3(a); 24 C.F.R. § 17.3(a); (3) and set forth the amount claimed in sum certain with respect to each item of property, 28 C.F.R. § 14.4(c); 24 C.F.R. § 17.4(c).

Our decision in *Bialowas v. United States, supra,* controls the disposition of Count I in this case. In *Bialowas* the action was dismissed for lack of jurisdiction because the claimant's administrative claim did not state a sum certain nor did it comply with other requirements of the regulations. In affirming the district court's dismissal of *Bialowas'* complaint, we emphasized the need for strict compliance with the "indispensible prerequisites" to state a valid claim and said:

> "The initial purpose of the regulations requiring a statement of the specific sum claimed is to enable a determination by the head of the federal agency as to whether the claim falls within the jurisdictional limits of his exclusive authority to process, settle or to properly adjudicate the claim. Above those limits the settlement

must have the prior written approval of the Attorney General or his designee. Furthermore, the requirements of the regulations are intended to set up uniform procedures in the exercise of settlement authority. The necessity for a signature to the claim is to fix responsibility for the claim and the representations made therein."

443 F.2d at 1050 (footnote omitted). *Accord Jordan v. United States,* 333 F.Supp. 987 (E.D.Pa.1971), *aff'd mem.,* 474 F.2d 1340 (3d Cir. 1973).

Here, the district court correctly applied these principles in testing the administrative "claim" presented by the Commonwealth against the requirements of the administrative regulations. The district court held that the claim presented by the Commonwealth by letter dated October 3, 1973 (the Denenberg letter)[19] did not satisfy the administrative regulations in three respects. First, the district court held that the Denenberg letter did not present a claim from individual owners of flood damaged property; second, that the claim was not presented by authorized agents or legal representatives of owners; and third, that the letter did not set forth a claim in sum certain.

In large measure, we agree with the district court's evaluation of the Denenberg letter's failure to present a valid administrative claim. As such, we need not repeat the details of the district court's analysis. *See* 378 F.Supp. at 1349–53. Nevertheless, we believe it necessary to comment briefly on certain issues not discussed by the district court[20] and to refine others.

### A. Count I as to Federal Defendants

The Commonwealth sought relief under Count I in four different capacities:

---

**18.** *See United States v. Muniz,* 374 U.S. 150, 165–66, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *City of Pittsburg v. United States,* 359 F.2d 564, 567 (3d Cir. 1966); 1966 U.S.Code Cong. & Admin.News, p. 2515 *et seq.*

**19.** The pertinent portions of the correspondence between the Commonwealth (the Den-

enberg letter) and HUD (the Margulies letter) are set forth and discussed in the district court's opinion and accordingly are not reproduced here. *See* 378 F.Supp. at 1351–52.

**20.** *See, e. g.,* 378 F.Supp. at 1342 n. 5.

(1) in its own behalf for property damage which it itself sustained; (2) as subrogor of claims paid by it to uninsured individual parties; (3) as *parens patriae* ; and (4) as a representative of a class, the members of which sustained damage by the acts or omissions of the federal defendants. Accordingly, we must analyze the Denenberg letter with respect to each status alleged under which the Commonwealth brings suit.[21]

### 1. *On behalf of the Commonwealth itself*

■ First, in regard to the Commonwealth's capacity to sue on its own behalf, the district court held that the Denenberg letter did not present a claim on behalf of the Commonwealth. 378 F.Supp. at 1352. We disagree. In our view, the Commonwealth presented a claim but the claim was ineffective for purposes of the Act. Although the Denenberg letter opens by indicating that "demand is . . . made on behalf of the citizens, residents and taxpayers . . . .," it continues by requesting "relief . . . for property losses occurring . . . to . . . structures owned by [the] State . . . governmen[t] or agencies thereof . . . ." Our reading of the letter in its entirety leaves us with no doubt that the Commonwealth claimed recovery for damage to its own potentially insurable property.[22]

While the Commonwealth presented a claim on its own behalf and thus satisfied the first of the administrative requirements that a claim be presented by the owner of the property damaged,[23] it

nevertheless failed to state a sum certain in the amount claimed for Commonwealth losses. Hence, the Commonwealth's administrative claim on its own behalf was legally deficient and thus did not comply with the jurisdictional requirements of § 2675(a). *Bialowas v. United States, supra.*

### 2. *Subrogor*

■ Paragraph 5(a) of the Commonwealth's complaint asserts the Commonwealth's status to sue as a subrogor ". . . having . . . assumed obligations . . . and expenses on account of damage to citizens of Pennsylvania." This naked assertion is nowhere spelled out as to the details of damage, the identity of the property damaged, the owners of the property damaged, or the amount of the damages paid to individuals by the Commonwealth, which would entitle the Commonwealth to recover as a subrogor. Nor did the Commonwealth furnish any evidence with its "claim" that it had the rights of a subrogor as to individual subrogees. Without regard to whether the complaint with these deficiencies could have properly withstood a Rule 12(b) motion to dismiss, the failure of the Commonwealth to supply these same details in its administrative claim, and thereby to supply the necessary jurisdictional requisites,[24] is fatal to the Commonwealth's subrogor status in this proceeding. *See Bialowas v. United States, supra.*

### 3. *Parens Patriae*

■ The right of a State to sue as *parens patriae* [25] encompasses suits either

---

**21.** The Commonwealth preliminarily contends that a close reading of HUD's reply letter indicates that HUD considered and denied the Commonwealth's claim on the merits and that, as such, the federal defendants are estopped from denying that the claim presented by the Commonwealth was not valid. Whether or not estoppel is available against the United States, a fair reading of HUD's reply letter in its entirety reveals that the claim was not rejected on the merits, but rather it was rejected for failure to comply with the applicable administrative regulations.

**22.** The Act expressly provides that if property owned by State or local governmental units is situated in qualified communities it may be eligible for flood insurance. 42 U.S.C. § 4012(b)(2)(E).

**23.** *See* 28 C.F.R. § 14.3(a); 24 C.F.R. § 17.3(a).

**24.** *See* 28 C.F.R. § 14.3(d); 24 C.F.R. § 17.3(d).

**25.** *Parens patriae* is a concept of standing utilized to protect quasi-sovereign interests, *see* Georgia v. Pennsylvania R.R. Co., 324 U.S.

brought to protect its proprietary interests or brought to protect "quasi-sovereign" interests, such as the health, comfort and welfare of its citizens and general economy of the state. *See generally Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). We have already held that the Denenberg letter could not support a claim on behalf of the Commonwealth's own property; *i. e.* its proprietary interest. To maintain a *parens patriae* suit, therefore, the Commonwealth is remitted to seek relief for damage to its "quasi-sovereign" interests.

■ A "quasi-sovereign" interest must be an interest of the State existing separate and apart from those injuries suffered individually by the State's citizens. *See Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 237, 27 S.Ct. 618, 51 L.Ed. 1038 (1907). What must be at stake is the State's independent interest, which generally arises from either (1) the State itself having suffered injury, such as direct damage to its economy, *see, e. g., Pennsylvania v. West Virginia,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923) (suit to preclude restraints on the commercial flow of natural gas) or (2) the general public having suffered an injury so that no one individual has legal standing to sue, *see, e. g., Missouri v. Illinois,* 180 U.S. 208, 241, 21 S.Ct. 331, 45 L.Ed. 497 (1901) (suit to enjoin the discharge of sewage into the Mississippi River). Under either circumstance, the *sine qua non* for the State, which sues in its *parens patriae* capacity, is that damage has occurred to its interest apart from the interests of particular individuals who may have been affected. *Georgia v.*

439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945), and means literally "parent of the country." *See* Black's Law Dictionary 1269 (4th Ed. 1951).

26. *See also* Oklahoma ex rel. Johnson v. Cook, 304 U.S. 387, 396, 58 S.Ct. 954, 82 L.Ed. 1416 (1938); Pennsylvania v. West Virginia, *supra*; Oklahoma v. Atchinson, Topeka & Santa Fe Ry., 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 436 (1911). In these cases, the question before the Supreme Court was whether the State had standing to invoke the original jurisdiction of the Supreme Court under Article III, Section 2

*Pennsylvania R.R. Co.,* 324 U.S. 439, 451, 65 S.Ct. 716, 89 L.Ed. 1051 (1945).

Here, the Commonwealth has failed to allege in its complaint that as sovereign its quasi-sovereign interests have been damaged. Indeed, even viewing the complaint in a manner most favorable to the plaintiff, *see Melo-Sonics Corp. v. Cropp,* 342 F.2d 856, 858–59 (3d Cir. 1965), it seeks monetary relief for only two categories of damages suffered. As we have discussed, its first claim is for damage to its own property. We have held that claim to be barred by the Commonwealth's failure to exhaust required administrative remedies. The second claim which it asserts is, in essence, a claim for relief for the injury suffered *individually* by its citizens and residents.

■ As to this latter claim, the Commonwealth does not allege any interest in its citizen's claims. As such, the Commonwealth's interest is not sufficient for it to maintain a *parens patriae* claim. For such a claim the State must show a direct interest of its own and not merely seek redress for injury to private parties, who, being the real parties in interest, could themselves have prosecuted their own particular claims. *State of California v. Frito-Lay, Inc.,* 474 F.2d 774 (9th Cir. 1973), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1974). *See In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122 (9th Cir. 1973), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1974); *In re Motor Vehicle Air Pollution Control Equipment,* 52 F.R.D. 398 (C.D.Cal.1970); *Philadelphia Housing Auth. v. American Radiator & Std. Sanitary Corp.,* 309 F.Supp. 1057, 1061 (E.D.Pa.1969).[26]

of the Constitution. That section confers original jurisdiction on the Court of suits between States or by one State against a citizen of another State. In each case, the Court sought to determine whether the State was suing in its own behalf as *parens patriae* or was actually suing to recover for injuries to designated individuals. Where it was held that the State was bringing its action on behalf of particular citizens, leave to sue as *parens patriae* was denied in order to prevent circumvention of the Eleventh Amendment. *See e. g.,* Hawaii v. Standard Oil Co., 405 U.S. at 258 n. 12, 92

#### 4. *Class Representative*

The Commonwealth contends that it presented a sufficient claim to HUD in its capacity as a class representative. This contention and "claim" were rejected by both HUD and the district court, on the ground that the "claim" failed to comply with the applicable administrative regulations. Those regulations in addition to requiring specifications other than a sum certain, require that if a claim is not presented by a property owner, that it be presented in the name of the owner by an authorized agent or legal representative. *See* 28 C.F.R. § 14.3(a), (e); 24 C.F.R. § 17.3(a), (e). Furthermore, the Denenberg letter was unaccompanied by documentary or statutory evidence of authority to present claims on behalf of unnamed ·property owners. 28 C.F.R. § 14.3(e); 24 C.F.R. § 17.3(e). *See Gunstream v. United States,* 307 F.Supp. 366, 368 (C.D.Cal. 1969). In contesting the rejection of its "claim" made on behalf of a class, the Commonwealth asserts that these administrative requirements are contrary to· the intent of the Federal Tort Claims Act. The Commonwealth argues that the Act, by providing that the United States is to be liable as a private individual under like circumstances, implicitly allows class action tort suits to be brought against the United States. 28 U.S.C. § 2674.[26a] To the extent that the Commonwealth's argument would permit a class action tort claim against the United States to proceed without each

member of the class having initially satisfied the jurisdictional requirements of the Federal Tort Claims Act, we disagree.

Initially, we recognize that neither the Act nor the regulations make provision for filing "class action" administrative claims against the United States. The Act requires submission of a sum certain claim to the appropriate administrative agency for initial review. This procedure allows the appropriate agency in the first instance to determine its statutory authority to settle claims and, if so authorized, to dispose of them. *Bialowas v. United States,* 443˙ F.2d at 1050; *see Caton v. United States,* 495 F.2d 635, 637–38 (9th Cir. 1974) and p. 20, *supra.* If no final disposition is made within the specified time period or if the claim is denied, the claimant may initiate court action. 28 U.S.C. §§ 1346(b), 2675.

Under these procedures, before the jurisdiction of the courts may be invoked, each claimant must submit an independent and separate claim to the appropriate administrative agency for review and possible settlement. 28 U.S.C. § 2675(a); *Bialowas v. United States, supra.* In this respect, the statute makes no distinction between the individual claimant and the claimant who may, by reason of the facts giving rise to his claim, be a member of a class. In both instances, the purpose[27] and the language of the statute require claimants to have separately and individually satisfied all jurisdictional requirements: *See Harrigan v.*

---

S.Ct. 885; Oklahoma ex rel. Johnson v. Cook, 304 U.S. at 392–93, 58 S.Ct. 954. Although the case before us does not present Eleventh Amendment issues, the principles of these cases nevertheless apply. *See* California v. Frito-Lay, Inc., *supra.*

Moreover, as damages are being sought, we can foresee that if the Commonwealth were permitted to proceed as *parens patriae* under the allegations of this complaint and circumstances of this case, there is a risk of duplication in recovering for the same damage inasmuch as our analysis of the complaint reveals that the claims asserted are *not* "independent of and behind the titles of its citizens." Georgia v. Tennessee Copper Co., 206 U.S. 230, 237 27 S.Ct. 618, 619, 51 L.Ed. 1038 (1907). *See Hawaii v. Standard Oil Co.,* 405 U.S. at 261–64, 92 S.Ct. 885.

**26a.** In pertinent part, 28 U.S.C. § 2674 provides:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

**27.** A primary purpose of the 1966 Amendments to the Federal Tort Claims Act was to provide increased opportunity for administrative consideration and settlement of tort claims in order to reduce court congestion and avoid unnecessary litigation. *See* 1966 U.S. Code Cong. & Admin.News, pp. 2515–2527.

*United States,* 63 F.R.D. 402 (E.D.Pa. 1974); *cf. Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

■ Contrary to the Commonwealth's contention, this "separate and individual satisfaction" of claim requirements does not conflict with either 28 U.S.C. § 2674 or Fed.R.Civ.P. 23.

■ There is no conflict with 28 U.S.C. § 2674 (United States to be liable as a private individual under like circumstances) since by statute[28] unless a tort claim is first presented to the appropriate administrative agency, the court lacks subject matter jurisdiction over the claim asserted against the United States. Thus, the United States stands in no different posture than a private individual against whom liability is sought to be asserted, but where the court lacks subject matter jurisdiction. It is unavailing to the Commonwealth's argument that subject matter jurisdiction in actions against private individuals may be established under various statutory enactments. Here, where the United States is the defendant, a tort action can be brought only under the Federal Tort Claims Act. If jurisdiction is not established under the Act through compliance with its requirements, jurisdiction cannot be established at all. There is no general statutory jurisdiction over actions against the United States, *see Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and thus if the conditions by which the United States has consented to be sued are not met, subject matter jurisdiction is lacking. Consequently, the absence of subject matter jurisdiction does not affect the liability of the United States in a *different* manner than that of a private individual as the Commonwealth contends, but rather the liability of the United States is affected by the absence of subject matter jurisdiction " . . . in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674.

■ Nor do the "separate and individual" jurisdictional requirements conflict with the provisions of Fed.R.Civ.P. 23, which permits class actions. Rule 23's authority and provisions are in no way lessened or affected by our first requiring that administrative tort claims brought against the United States meet individual jurisdictional requirements. *Compare Northern Natural Gas Co. v. Grounds,* 292 F.Supp. 619 (D.Kan.1968), *aff'd in part, rev'd in part,* 441 F.2d 704 (10th Cir.), *cert. denied,* 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971) *with Harrigan v. United States, supra.* Once these requirements have been met by the individual claimants, the provisions of Rule 23 are operative with respect to a liability action against the United States in the same manner and to the same extent as in an action against a private individual under like circumstances. Moreover, the operation of Rule 23 is confined to suits of a civil nature in the federal courts, *see* Fed.R.Civ.P. 1, and has no application to class actions asserted in administrative proceedings where a court proceeding has yet to be initiated.

No legislative history has been cited to us which would demonstrate that Congress either sought to avoid or legislate against this result. To the contrary, both 28 U.S.C. § 2675 and Fed.R.Civ.P. 23 are separate legislative enactments which, as we have indicated, are not inconsistent with each other, but rather can and should be construed harmoniously. Thus, if for no other reason than the failure of the individual claimants to satisfy the jurisdictional requisites of the Federal Tort Claims Act, the Commonwealth is precluded from representing individual claimants in a class action.[28a]

---

28. *See* 28 U.S.C. § 2675(a).

28a. The Commonwealth is also precluded from prosecuting its federal complaint as a class action by another, and more "traditional", principle. In order for the Commonwealth, as plaintiff, to be a proper class action representative under Fed.R.Civ.P. 23, it must have standing to maintain this suit on its own behalf. Kauffman v. Dreyfus Fund, Inc., 434

No relief being available under any of the four capacities alleged by the Commonwealth, see p. 20 supra, the district court properly dismissed Count I (the tort claim) as against the federal defendants.

### B. Count II as to Federal Defendants

Count II of the complaint, alleging a breach of contract, was also dismissed by the district court for lack of jurisdiction under 28 U.S.C. § 1346(a)(2) (the Tucker Act). The Tucker Act confers jurisdiction on the federal courts over a "civil action or claim against the United States, not exceeding $10,000 in amount . . . ." The district court, holding that the Act applies to the entire sum sought to be recovered from the government in this action (in excess of one billion dollars),[29] held that it lacked jurisdiction over Count II. The district court explained its dismissal of Count II and disposed of the Commonwealth's contentions as follows:

"Since the recovery sought exceeds the $10,000 jurisdictional amount allowed by 28 U.S.C. § 1346, jurisdiction over this count is explicitly withheld from District Courts."

378 F.Supp. at 1353.

We agree with the district court that on this complaint and in this procedural context, Count II must be dismissed. We are concerned, however, that the summary dismissal by the district court might be interpreted as rejecting the viability of class actions under the Tucker Act where the aggregate class recovery from the Government may exceed $10,-000. To construe our affirmance of the district court's dismissal of Count III as precluding class actions under the Tucker Act would be erroneous.

■■■■ Tucker Act jurisdiction (28 U.S.C. § 1346(a)(2)) is properly invoked where the claim does not exceed $10,000 or where the claimant waives any amount sought in excess of the Act's jurisdictional limit. See Perry v. United States, 308 F.Supp. 245 (D.Colo.1970), aff'd, 442 F.2d 353 (10th Cir. 1971). Where jurisdiction is based on § 1346(a)(2), it should not fail because the claimants sue as a class. Northern Natural Gas Co. v. Grounds, 292 F.Supp. at 641–44.

■■■■ Accordingly, if the district court would otherwise have had jurisdiction over each class member's claim were such claim presented separately, Tucker Act jurisdiction would have been available even though when all individual claims were aggregated the total amount claimed exceeded one billion dollars. See Zahn v. International Paper Co., supra.

■■■■ Here, the complaint reflects no individual claim of a class member, or of the Commonwealth, which would satisfy Tucker Act jurisdiction. Therefore, as we have stated the dismissal of Count II was correct for want of jurisdiction.

### C. Count III as to Federal Defendants

■■■■ The Commonwealth's third and last claim for relief against the federal defendants (Count III) is a petition for mandamus. For a petition to state a claim upon which mandamus relief may be granted, it is imperative that the petitioner allege that the government owes the petitioner the performance of a legal duty "so plainly prescribed as to be free from doubt." Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972), rev'd on other grounds, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). See Davis v. Shultz, 453 F.2d 497 (3d Cir. 1971). Although the district court concluded that its jurisdiction was properly invoked under 28 U.S.C. § 1361, it dismissed the petition for mandamus on the grounds that the complaint failed to specify "any ministerial act devoid of the

---

F.2d 727 (3d Cir. 1970). As we have already held that the Commonwealth lacks standing to sue on its own behalf because of its failure to submit a valid administrative claim, under the

Kauffman rule it cannot properly sue in the capacity of a class representative.

**29.** Complaint; App. 28a.

exercise of judgment and discretion which the Commonwealth seeks to require the Secretary perform." 378 F.Supp. at 1354. The district court held that the Commonwealth's complaint failed to refer to any mandatory language in the National Flood Insurance Act that would place positive, non-discretionary, obligations upon the Secretary. We do not agree.

 Although we agree with the district court that almost every provision of the National Flood Insurance Act cited in the complaint contains language of discretion,[30] and thus as to those provisions mandamus relief is inappropriate, we read the provision concerning "publicity" in a different light.

Paragraph 12 of the complaint (App. 13a) requested mandamus relief against the Secretary

" . . . to compel him to perform those statutory duties which he owes to plaintiff and those plaintiff represents and which were conferred upon him by the National Flood Insurance Act, 42 U.S.C. *et seq.*"

Paragraph 34 of the complaint detailed these statutory duties by alleging that the Secretary was obliged to "publicize, qualify, sell and service flood insurance policies to that segment of the public which were in need of flood insurance." The complaint then quoted the pertinent portion of 42 U.S.C. § 4020:

"The Secretary shall from time to time take such action as may be necessary in order to make information and data available to the public and to any state or local agency or official, with regard to

(1) the flood insurance program, its coverage and objectives . . . .

42 U.S.C. § 4020

App. 23a–24a. Under paragraph 38, the complaint alleged the *total failure* of the Secretary to perform the duties partially set forth in paragraph 34. Complaint, Par. 38; App. 25a.

 These paragraphs, when read together, set forth a sufficient allegation which, *if proved,* warrants mandamus relief. *Cf. People ex rel. Bakalis v. Weinberger,* 368 F.Supp. 721 (N.D.Ill.1973). Although § 4020 does contain language of discretion normally not subject to review under a petition for mandamus, the discretion authorized pertains only to the time and manner of acting. Specifically, the provision mandates that "the Secretary *shall* . . . *take* such action as may be necessary . . . .." 42 U.S.C. § 4020 (emphasis supplied). The inclusion of the phrase "as may be necessary" does not permit disobedience to the initial directive, implicit in the statutory framework, requiring the Secretary to first consider whether or not action should be taken. *Cf. Work v. United States ex rel. Rives,* 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561 (1925); *Davis Assoc., Inc. v. HUD,* 498 F.2d 385 (1st Cir. 1974). It is sufficient if the Secretary, having considered whether action should be taken, then determines that no action is necessary.[31] But the Secretary cannot avoid taking the first step of evaluating the necessity of disseminating informa-

---

**30.** The Commonwealth urged that the Secretary's statutory obligations to perform "ministerial" acts are set forth in 42 U.S.C. §§ 4011, 4018(b), 4020, 4051, 4052. Section 4011 is the general provision authorizing the Secretary to establish a national flood insurance program and requires the Secretary to "encourage and arrange" for private insurers' participation. Complaint, Par. 33; App. 22a. Section 4018(b) sets forth statutory definitions and, as such, provides no basis for mandamus relief compelling the Secretary to perform a specified duty. Sections 4051 and 4052 deal only with the Secretary's authority to enter into agreements with private insurers and do not mandate the Secretary to perform non-discretionary actions. Section 4020 is discussed in text above and reproduced in full at note 9 *supra.*

**31.** Even if it be shown that the Secretary has considered dissemination of flood insurance information but has consistently exercised his discretion to make no information available, correction by mandamus may still lie if the failure to act constitutes an abuse of discretion. *See Chaudoin v. Atkinson,* 494 F.2d 1323, 1330 (3d Cir. 1974). Again, a hearing would be required to determine the appropriateness of mandamus relief under such circumstances.

tion. It is that step to which the Commonwealth has, in part, addressed its complaint. It is only at a hearing that the facts bearing upon this allegation may be developed. Accordingly, mandamus may issue to require the exercise of permissible discretion, *see McQueary v. Laird,* 449 F.2d 608, 611 (10th Cir. 1971), although the manner in which the discretionary act is to be performed is not to be directed by the court. *See Larson v. Domestic and Foreign Corp.,* 337 U.S. 682, 695, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

Accordingly, as to Count III against the federal defendants. only, consistent with the views we have expressed, we will reverse and remand for a hearing as to the appropriateness of mandamus relief. We will affirm the July 1, 1974 Order of the district court dismissing all other counts in the complaint as against both defendants.