525 F.2d 151
 8 ERC 1702, 6 Envtl. L. Rep. 20,205
 In re GRAND JURY PROCEEDINGS (U. S. STEEL-CLAIRTON WORKS),
United States of
America, Appellant. In re GRAND JURY PROCEEDINGS (U. S.
STEEL-CLAIRTON WORKS), United States of America, Petitioner.
 Nos. 75-1450 and 75-1456.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 2, 1975.
Decided Oct. 20, 1975.
 
 Wallace H. Johnson, Washington, D. C., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Edmund B. Clark, Bradford F. Whitman, John J. Zimmerman, Washington, D. C., for appellant and petitioner.
 Walter T. McGough, Gilbert J. Helwig, J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for United States Steel Corp.
 Before VAN DUSEN, ADAMS and HUNTER, Circuit Judges.OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This is an appeal from a district court's order staying all further proceedings before a federal grand jury pending a final judgment in a civil contempt action brought against the United States Steel Corporation by state and county officials in a Pennsylvania state court. Because we conclude that the district court erred in granting the stay, we vacate that stay and remand for such further proceedings as may be required consistent with this opinion.
 
 
 2
 * The roots of the instant controversy are, to a great extent, found in a September 25, 1972, consent decree entered in an action by the Commonwealth of Pennsylvania and Allegheny County against United States Steel Corporation (U. S. Steel) in the Court of Common Pleas of Allegheny County.[1] The consent decree modified earlier state and county limitations on emission of particulate matter and sulfur oxides from the coke ovens of U. S. Steel's Clairton, Pennsylvania Coke Works. While the United States was not a party to the consent decree, it subsequently approved the emission standards on March 22, 1973 as a revision of Pennsylvania's Clean Air Act Implementation Plan.[2] Thereafter, these standards became federally enforceable under section 113 of the Clean Air Act, 42 U.S.C. § 1857c-8.[3]
 
 
 3
 On March 27, 1973, the Commonwealth of Pennsylvania and Allegheny County instituted a civil contempt action against U. S. Steel for failure to comply with the limitations set forth in the consent decree.[4] In that action, U. S. Steel asserted that the limitations were technologically impossible of achievement and asked the state court to modify the September 25, 1972, consent decree by adopting new coke oven door emission standards. The state action was still pending at the time the district court entered its stay on March 6, 1975.[5]
 
 
 4
 Pursuant to section 113 of the Clean Air Act, 42 U.S.C. § 1857c-8, on November 8, 1973, the United States Government issued notices to U. S. Steel of violation of emission limitations and compliance schedules contained in the federally approved Pennsylvania Clean Air Act Implementation Plan, as modified by the September 25, 1972, consent decree. The federal grand jury here involved was empanelled on October 22, 1974, for an 18-month term, to investigate the possible criminal violations of the Clean Air Act, 42 U.S.C. § 1857 et seq., by U. S. Steel at its Clairton Works. On November 27, 1974, subpoenas duces tecum were served by the Government on sixteen employees and executives of U. S. Steel. The subpoenas directed the sixteen individuals to appear before the grand jury and ordered them to produce numerous documents relating primarily to the level of smoke emissions from the coke oven doors at the Clairton Works.
 
 
 5
 U. S. Steel produced the requested documents on January 7, 1975[6] but continued to resist those parts of the subpoenas that required the appearance of the U. S. Steel employees before the grand jury.
 
 
 6
 A hearing was set for February 3, 1975 by the district court on U. S. Steel's motion to "modify, limit or quash" the subpoenas or to stay the grand jury proceeding pending a final judgment in the state civil contempt action. The asserted bases for U. S. Steel's motions were that:
 
 
 7
 1) the prior pending state proceedings were a bar to simultaneous federal enforcement of the coke oven door emission standards;
 
 
 8
 2) the Government refused to comply with the requirements established by this Court in Schofield I[7] and II[8]; and
 
 
 9
 3) prejudicial publicity allegedly initiated by the Government's actions foreclosed impartial consideration by the grand jury.
 
 
 10
 The district court filed a memorandum opinion on March 6, 1975, in which the court granted U. S. Steel's motion to stay the grand jury's proceedings. In its opinion, the court expressly refused to address either the Schofield or publicity issues.[9] Rather, after reviewing the legislative history of sections of the Clean Air Act, the court held that Congress "did not intend to authorize dualistic enforcement proceedings against polluters based upon the same violations of emission limitations which are incorporated in the same implementation plan." Thus, ruled the district court, since the Commonwealth of Pennsylvania had already instituted proceedings to enforce the coke oven door limitations at the Clairton Works, the United States was completely prohibited from continuing its investigation before the grand jury pending a final judgment in the state suit.
 
 
 11
 The instant appeal followed the district court's stay. Thereafter, the Government also filed a petition for mandamus, which was consolidated with the appeal.
 
 II
 
 12
 The first issue that confronts this court is whether we have jurisdiction to review the action of the district court. Appellant urges three bases for jurisdiction in this matter: 1) 28 U.S.C. § 1291;[10] 2) 28 U.S.C. § 1292(a)(1);[11] and 3) 28 U.S.C. § 1651(a).[12] Because we conclude that the lower court's stay is appealable as a "final decision" within the meaning of section 1291, we need not discuss the other asserted bases for jurisdiction. It should be noted, however, that even if the district court's order is not appealable as such, petitioners would, in any event, be entitled to review by mandamus.[13]
 
 
 13
 That appellate review is restricted to "final decisions," has long been the dominant rule of federal appellate procedure. Cobbledick v. United States, 309 U.S. 323, 324, 60 S.Ct. 540, 84 L.Ed. 783 (1940); see McGourkey v. Toledo & Ohio R. R., 146 U.S. 536, 544-45, 13 S.Ct. 170, 36 L.Ed. 1079 (1892); First Judiciary Act §§ 21, 22, 25, 1 Stat. 73, 83, 84, 85 (1789). The rule serves to prevent the "debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). Because piecemeal review is especially damaging to the conduct of criminal cases, the final judgment requirement applies with particular force in criminal appeals. DiBella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Cobbledick v. United States, supra, 309 U.S. at 324-26, 60 S.Ct. 540.
 
 
 14
 While the rule and its purposes can be stated with ease, the determination of the finality of an individual order is often a difficult task. The Supreme Court has counselled that the requirement of finality is to be given a "practical rather than a technical construction," Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949), and that a "pragmatic approach" to finality is essential to achieving a healthy legal system, Brown Shoe Co. v. United States, 370 U.S. 294, 306, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Applying these principles to the facts of the instant case, we find the district court's order to be final.
 
 
 15
 The district court's indefinite stay of the grand jury's proceedings has the practical effect of a dismissal of the proceedings. See Amdur v. Lizars, 372 F.2d 103, 105-06 (4th Cir. 1967).[14] This grand jury's term expires in April 1976. The state court action already has consumed more than two years and, due to the complexity of the issues presented, likely will continue beyond the grand jury's April 1976 expiration date.[15] Investigation and possible prosecution of criminal violations of the Clean Air Act is effectively precluded by the district court's stay.[16]
 
 
 16
 Appellee contends that several decisions of the Supreme Court require this court to conclude that the district court's order is not appealable. In United States v. Ryan, 402 U.S. 530, 532, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), DiBella v. United States, 369 U.S. 121, 131, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) and Cobbledick v. United States, 309 U.S. 323, 327-28, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Supreme Court held that certain district court orders granting or denying motions to quash subpoenas or to suppress evidence were not final orders within the meaning of section 1291.[17] One who seeks to resist the production of requested information must either comply with the orders or resist them and by doing so, risk the possibility of contempt.[18]
 
 
 17
 The policy underlying these Supreme Court decisions was to avoid the disruption of grand jury proceedings that piecemeal appeals necessarily involve. If an immediate appeal could be taken from every court order concerning matters before a grand jury, years would pass before any grand jury could complete its investigation. Indeed, the grand jury's term might expire before the appeals could run their course. "To be effective," the Cobbledick Court admonished, "judicial administration must not be leaden-footed"; "(o) pportunity for obstructing the 'orderly progress' of investigation should . . . (not) be encouraged."[19]
 
 
 18
 Our conclusion that the district court's stay is appealable does not frustrate this policy. Permitting appeal in this instance does not involve this Court in the sort of mini-trials that the Supreme Court sought to avoid. Unlike Ryan, DiBella and Cobbledick, which merely concerned particular orders to individual witnesses pertaining to specific evidence, the district court's stay in the instant case goes to the entire grand jury proceeding; it affects all witnesses and all evidence. To deny appeal of this order would only encourage the "leaden-footed" administration of justice, for the lower court's order has caused the entire federal proceedings against U. S. Steel to grind to a halt.[20]
 
 
 19
 Thus, while recognizing the vitality of Ryan, DiBella and Cobbledick, we find this case to be an exception to the general rule enunciated in those opinions. As stated recently by the Supreme Court in United States v. Nixon, 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974): "The requirement of submitting to contempt . . . is not without exception and in some instances the purposes underlying the finality rule require a different result."[21]
 
 III
 
 20
 We come now to appellant's contention that the district court erred in staying the grand jury's investigation pending a final judgment in the state court action. Apparently believing that the grand jury was limited in its investigation only to violations by U. S. Steel of the coke oven door emission limitations, the court found dualistic enforcement of those limitations by both the state and federal governments prohibited under the Clean Air Act. Inherent in its power to bring the grand jury into existence, held the court, was the power to stay the grand jury's proceedings.
 
 
 21
 The special role of the grand jury in the history of Anglo-American jurisprudence has been amply documented by other courts and commentators and need not be reviewed by this court.[22] The investigative function of the grand jury is at the foundation of effective law enforcement in the United States, and accordance of broad powers to the grand jury in the conduct of its investigations is essential to the proper execution of its functions. As recently as 1974, the Supreme Court in United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), emphasized the broad powers of the grand jury:
 
 
 22
 Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). (emphasis added).[23]
 
 
 23
 The district court's stay constituted an unwarranted encroachment upon this plenary historical authority of the grand jury. See United States v. United States Dist. Ct., 238 F.2d 713, 719 (4th Cir. 1956). All investigation by the grand jury was halted even before it could be started. At that nascent stage of the grand jury's inquiry, the lower court could not possibly predict whether indictments would issue, or, if issued, against whom and for what violations. See Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919).[24] Thus, reliance on the Clean Air Act as the basis for the issuance of the stay was unfounded, without regard to the validity of the court's conclusion on dual enforcement.[25]
 
 
 24
 We are not unmindful of recent decisions by this court which have delineated the procedural rights of those summoned to appear before grand juries. See, e. g., In re Grand Jury Proceedings, 507 F.2d 963 (3d Cir. 1975); In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir. 1973). These decisions have sought to preserve the proper balance between the grand jury's need to know and the rights of witnesses summoned before it. However, the issues raised in those cases are not now before this court. We are presented only with the narrow issue of whether the district court erred in indefinitely staying all proceedings of this grand jury with regard to its investigation of U. S. Steel's Clairton Coke Works. We conclude that it did err.
 
 IV
 
 25
 For the foregoing reasons, the district court stay order will be vacated, see 28 U.S.C. § 2106, and the case will be remanded for such further proceedings as may be required consistent with this opinion. The mandate or certified judgment in lieu of mandate shall issue forthwith.
 
 
 
 [1]
 See Commonwealth of Pennsylvania v. United States Steel Corp., Pa.Cmwlth., 325 A.2d 324, 326 (1974). The consent decree resulted from civil injunctive proceedings brought by the Commonwealth and Allegheny County to remedy violations of air pollution regulations
 
 
 [2]
 40 C.F.R. §§ 52.2026(c), 52.2036(a) (1975)
 
 
 [3]
 The complementary nature of federal and state regulation of air pollution has been extensively reviewed by this court. See, e. g., Duquesne Light Co. v. Environmental Protection Agency, 522 F.2d 1186, 1188-1189 (3d Cir. 1975) (No. 72-1542); Duquesne Light Co. v. Environmental Protection Agency, 481 F.2d 1, 3-4 (3d Cir. 1973)
 
 
 [4]
 Commonwealth of Pennsylvania v. United States Steel Corp., No. 1550, April Term, 1972, Court of Common Pleas
 
 
 [5]
 On May 23, 1973, the state court judge filed an opinion calling for a joint committee of technical experts of all parties involved to examine the consent decree standards and to report its findings to the court. On appeal, the Commonwealth Court of Pennsylvania reversed the lower court on the ground that the court could not order the procedure sua sponte and remanded the action for further proceedings. Commonwealth of Pennsylvania v. United States Steel Corp., Pa.Cmwlth., 325 A.2d 324, 329-30 (1974). To our knowledge, the state proceedings have not been concluded
 
 
 [6]
 The district court had extended the time for response to the November 27, 1974, subpoenas in order to allow U. S. Steel sufficient time to assemble the requested documents. The amount of material and the number of witnesses requested had been reduced by agreement of the parties
 
 
 [7]
 In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir. 1973)
 
 
 [8]
 In re Grand Jury Proceedings, 507 F.2d 963 (3d Cir. 1975)
 
 
 [9]
 We reject these contentions which were raised by the U. S. Steel Corporation, appellee, in the district court. See also pages 157-158 below
 
 
 [10]
 Section 1291 states in pertinent part:
 The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . .
 28 U.S.C. § 1291 (1970).
 
 
 [11]
 Section 1292(a) provides, in part:
 The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions . . .
 28 U.S.C. § 1292(a)(1) (1970).
 
 
 [12]
 Section 1651(a) provides:
 The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 28 U.S.C. § 1651(a) (1970).
 
 
 [13]
 See Texaco v. Borda, 383 F.2d 607, 608 (3d Cir. 1967); United States v. United States Dist. Ct., 238 F.2d 713, 718-19 (4th Cir. 1956), cert. denied, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957); J. Moore, 9 Federal Practice P 110.20(4.-2), at 240 (2d ed. 1973)
 
 
 [14]
 Amdur involved an appeal from a district court's stay of its own proceedings pending final judgment in a similar state action. The Fourth Circuit found the district court's order to amount to a dismissal of the proceeding. See also McSurely v. McClellan, 138 U.S.App.D.C. 187, 426 F.2d 664 (1970)
 
 
 [15]
 Appellee asserts that the district court could summon a new grand jury when the present one's term expires. We decline appellee's invitation to engage in the speculation required of its argument, since it is enough that the investigative functions of the grand jury are being delayed and the statute of limitations may be running on violations occurring daily
 
 
 [16]
 A statement by the Supreme Court in DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), is particularly applicable:
 (T)he concept of finality as a condition of review has encountered situations which make clear that it need not invite self-defeating judicial construction.
 Id. at 125, 82 S.Ct. at 657.
 
 
 [17]
 See also Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906); In re Grand Jury Proceedings, 486 F.2d 85, 90 (3d Cir. 1973)
 
 
 [18]
 United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 84 L.Ed. 783 (1940)
 
 
 [19]
 309 U.S. at 325, 327, 60 S.Ct. at 542; see DiBella v. United States, 369 U.S. 121, 129, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962)
 
 
 [20]
 In this case, the Government cannot follow the traditional avenue to immediate appellate review; namely, resistance to the order and submission to a possible adjudication of contempt
 
 
 [21]
 Ryan, DiBella and Cobbledick noted that in certain circumstances immediate appeals from district court orders respecting grand jury proceedings were necessary to insure that all opportunity for review was not foreclosed. See United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); DiBella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Cobbledick v. United States, 309 U.S. 323, 328, 329 & n. 6, 60 S.Ct. 540, 84 L.Ed. 783 (1940); discussing Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) and Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918)
 
 
 [22]
 See, e. g., Costello v. United States, 350 U.S. 359, 361-62, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Blair v. United States, 250 U.S. 273, 279-83, 39 S.Ct. 468, 63 L.Ed. 979 (1919); Hale v. Henkel, 201 U.S. 43, 59, 26 S.Ct. 370, 50 L.Ed. 652 (1906); 4 W. Blackstone, Commentaries 301 et seq.; G. Edwards, The Grand Jury 1-44 (1906); 1 F. Pollock & F. Maitland, History of English Law 151 (2d ed. 1909); 1 W. Holdsworth, History of English Law 321-23 (7th rev. ed. 1956)
 
 
 [23]
 The Calandra Court went on to state: "A witness may not interfere with the course of the grand jury's inquiry. . . . Nor is he entitled 'to challenge the authority of the court or of the grand jury' or 'to set limits to the investigation that the grand jury may conduct.' " 414 U.S. at 345, 94 S.Ct. at 618. (citations omitted)
 Supreme Court opinions are replete with references to the broad investigative authority of grand juries. See, e. g., United States v. Dionisio, 410 U.S. 1, 13, 15, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Hale v. Henkel, 201 U.S. 43, 61, 62, 65, 26 S.Ct. 370, 50 L.Ed. 652 (1906). See also In re Grand Jury Proceedings, 507 F.2d 963, 965 n. 3 (3d Cir. 1975); Bursey v. United States, 466 F.2d 1059 (9th Cir. 1972); United States v. Doe (Ellsberg), 455 F.2d 1270 (1st Cir. 1972).
 
 
 [24]
 Appellee asserts that the identity of the indictees and the subject of the indictments were certain. We disagree. A grand jury is not confined to the witnesses or alleged offenders brought before it, Hale v. Henkel, 201 U.S. 43, 61, 26 S.Ct. 370, 50 L.Ed. 652 (1906), nor is it limited to the evidence or charges presented to it. Id.; see United States v. Thompson, 251 U.S. 407, 414, 40 S.Ct. 289, 64 L.Ed. 333 (1970)
 
 
 [25]
 While we do not reach the question of the correctness of the district court's interpretation of the Clean Air Act, we do note that two recent statements, one by the Supreme Court and one by this court, are of considerable guidance in the resolution of this issue. See Train v. National Resources Defense Council, Inc., 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); Duquesne Light Co. v. Environmental Protection Agency, 522 F.2d 1186, 1188-1189 (3d Cir. 1975) (No. 72-1542)