John **CERVASE**, Appellant,

v.

**OFFICE OF the FEDERAL REGISTER.**

No. 77–1392.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Jan. 5, 1978.

Decided May 30, 1978.

Robert J. DelTufo, U. S. Atty., Brian D. Burns, Asst. U. S. Atty., Newark, N. J., for appellee.

John Cervase, pro se.

Before GIBBONS and GARTH, Circuit Judges, and WEINER,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

John Cervase, an attorney at law appearing pro se, appeals from the dismissal of his complaint on the government's motion under Rule 12(c) of the Federal Rules of Civil Procedure. The complaint alleges: (1) that the Office of the Federal Register is under a statutory duty to prepare and publish an analytical subject index to the Code of Federal Regulations; (2) that the Office has breached this duty by preparing only a 164-page table of contents to the entire 120-volume Code; and (3) that this breach of duty has injured Cervase and the public at large by making it almost impossible for them to know which federal regulations apply to them. The government filed an answer to this complaint,.but later moved for judgment on the pleadings. On December 16, 1976, the district court granted the government's motion and dismissed the action. The court reasoned that mandamus would not lie to enforce the alleged statutory duty, that the Office was not a suable entity, and that the plaintiff had failed to satisfy the requirements of standing. In addition, the court declined to accept an amended complaint proffered by Cervase. The entire transcript of the exceptionally brief hearing on the government's Rule 12(c) motion is quoted in the margin.[1] Since we believe that such a summary disposition of Cervase's complaint was improper, we reverse the dismissal and remand the case for further proceedings.

### I

Cervase claims that the duty to prepare an analytical subject index arises out of two important federal statutes: the Federal

---

* Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The Court: *Cervase v. Office of the Federal Register.*

   In this lawsuit the plaintiff seeks the issuance of a Writ of Mandamus under 28 United States Code § 1361 to compel the defendant to "prepare and publish an analytical subject index" to the Code of Federal Regulations.

   While the Court is, of course, sympathetic to the complaint of the plaintiff and to other attorneys and citizens in general it cannot be gainsaid that CFR is difficult to use, and that the present system of indexing leaves much to be desired by way of completeness, accessibility and clarity.

   Nevertheless, the motion of the United States for judgment on the pleadings must be granted for at least the following reasons:

   1. A writ of mandamus will not lie to enforce a provision such as 44 United States Code § 1510. See, generally, *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11 (3d Cir. 1975).

   As a second reason, the Office of Federal Register is not a suable entity.

   And, finally, the plaintiff does not meet the required tests of standing to sue under relevant case law. See, generally, *Warth v. Seldin*, 422 U.S. 490 [95 S.Ct. 2197, 45 L.Ed.2d 343] (1975).

   Accordingly, the complaint will be dismissed. Prepare an order, U.S. Attorney's office.

   Mr. Cervase: Your Honor, may I just say one word for the record?

   The Court: Yes.

   Mr. Cervase: A pretrial conference is set for this morning on the case and the motion to dismiss came after that. I prepared an amendment to the complaint to present at the pretrial conference which I have with me now,—

   The Court: It is unnecessary.

   Mr. Cervase:—adding the Director of the Office of the Federal Register as a defendant in the case.

   The Court: Sorry. There is no case to have a conference on.

Register Act of 1935 [2] and the Freedom of Information Act of 1974.[3] As amended, § 11 of the Federal Register Act provides in relevant part:

(b) A codification published under subsection (a) of this section shall be printed and bound in permanent form and shall be designated as the "Code of Federal Regulations." The Administrative Committee shall regulate the binding of the printed codifications into separate books with a view to practical usefulness and economical manufacture. Each book shall contain an explanation of its coverage and other aids to users that the Administration Committee may require. *A general index to the entire Code of Federal Regulations shall be separately printed and bound.*

\* \* \* \* \* \*

(d) The Office of the Federal Register shall prepare and publish the codifications, supplements, collations, and indexes authorized by this section.

Act of Oct. 22, 1968, Pub.L. No. 90–620, ch. 15, § 11, 82 Stat. 1277 (codified at 44 U.S.C. § 1510) (emphasis added). This version of § 11 was adopted as part of a general recodification of laws relating to public printing and public records. Since that recodification was not intended to make any substantive changes in the law, we must look to the prior Federal Register Act of 1935, as amended, to determine the purposes underlying the statutory requirement that there be both a "Code of Federal Regulations" and a general index to that code.

Prior to 1935, although federal regulations of general applicability might have affected legal relations, they often were not conveniently available to those to whom they applied. Consequently, in that year Congress first imposed the requirement that such regulations be published in the Federal Register.[4] The Act also provided that a document required to be published would not be valid against any person who lacked actual knowledge thereof. However, publication of the document in the Federal Register was deemed sufficient to give notice to any person subject to or affected by the document.[5]

The original Federal Register Act provided for a compilation of all existing agency regulations of general applicability and legal effect. In 1937, however, that Act was amended to provide for codification instead of compilation, with a new codification to be made after five years.[6]

In the 1937 amendment Congress, for the first time, imposed the indexing obligation on those responsible for preparing the periodic codifications.[7] The significance of this obligation within the framework of what is commonly referred to as the Federal Register System [8] is obvious. Codification of a document is prima facie evidence both of its text and of its continuing legal effect.[9] Publication of the document in the Federal Register makes it effective against the world. But without the retrieval mechanism provided by an adequate index, a person might never be aware of a document containing a regulation affecting him until some federal bureaucrat produced a copy of the document and attempted to apply it to him. Indeed, the affected individual might already have changed his position in complete ignorance of the existence of the regulation. Such ignorance would avail him not, however, since publication in the Federal Register gives him constructive notice

2. Pub.L. No. 74–220, 49 Stat. 500, ch. 417 (July 26, 1935).

3. Pub.L. No. 93–502, 88 Stat. 1561 (Nov. 21, 1974) (amending 5 U.S.C. § 552).

4. Pub.L. No. 74–220, 49 Stat. 500, ch. 417, § 5(a)(3) (July 26, 1935) (codified at 44 U.S.C. § 1505(a)(3)).

5. *Id.* at § 7 (codified at 44 U.S.C. § 1507).

6. Federal Register Act Amendments, Pub.L. No. 75–158, 50 Stat. 304, ch. 369 (June 19, 1937) (codified at 5 U.S.C. § 1510).

7. *Id.* at § 11(b) (codified at 44 U.S.C. § 1510(b)).

8. *See* 1 K. Davis, Administrative Law Treatise § 6.09, at 391 (1958); 2 B. Mezines, J. Stein and J. Gruff, Administrative Law § 7.02[1], at 7–24 (1977).

9. 44 U.S.C. § 1510(e).

of the existence of the regulation. The Federal Register Act was enacted because of widespread dissatisfaction with the unsystematic manner in which executive orders, agency regulations, and similar materials were being made available to the public.[10] The basic object of this statutory reform was to eliminate secret law. We think that the indexing obligation is a central and essential feature of this congressional plan. Without that obligation the periodic codification of regulations cannot serve the congressional purpose of providing public access to what has been published in the Federal Register.

The first codification appeared in 1938. Although the codification system was suspended during World War II,[11] it was revived by executive order thereafter and a new codification appeared in 1949. In 1953 Congress amended the Act to provide for more frequent revisions.[12]

■ The Administrative Committee of the Federal Register is charged with the statutory responsibility for publishing the Federal Register and the Code of Federal Regulations.[13] However, through a regulation the Committee has delegated the authority to administer the Office of the Federal Register to the Director of the Federal Register.[14] Other regulations provide for the indexing of the Federal Register[15] and for the annual publishing of a subject index to the Code of Federal Regulations.[16] Neither the Federal Register Act nor these regulations make this matter of indexing discretionary. On the contrary, there is a plain and mandatory duty to provide indices.

Cervase claims that the 164-page table of contents is so totally inadequate that it cannot be considered to be in compliance with that mandatory duty. In his brief to the district court Cervase observed that the 1938 codification consisted of 14 volumes, with a general index of 513 pages. The current codification has grown to 120 volumes covering fifty titles, while what passes for an index has actually shrunk to 164 pages. By contrast, the general index to the fifty titles of the annotated United States Code comprises eight bound volumes and eight supplements, or a total of 9024 pages.

Although his complaint alleged only a violation of 44 U.S.C. §§ 1510(b) and (d), in his brief to the district court Cervase also relied on the Administrative Procedure Act,[17] as amended by the Freedom of Information Act.[18] This Act imposes a separate indexing obligation on federal agencies:

*Each agency shall also maintain and make available for public inspection and copying current indexes* providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary and impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency

**10.** *See* 2 B. Mezines, J. Stein & J. Gruff, Administrative Law § 7.02[1], at 7–24 (1977).

**11.** Pub.L. No. 77–796, 56 Stat. 1045, ch. 717 (Dec. 10, 1942).

**12.** Pub.L. No. 83–200, 67 Stat. 388, ch. 333 (Aug. 5, 1953).

**13.** 44 U.S.C. § 1506.

**14.** 1 C.F.R. § 2.4.

**15.** 1 C.F.R. §§ 6.1 & 6.2.

**16.** 1 C.F.R. § 8.4.

**17.** Pub.L. No. 79–404, 60 Stat. 237, ch. 324 (June 11, 1946); Pub.L. No. 89–554, 80 Stat. 379 (Sept. 6, 1966) (codified at 5 U.S.C. § 552).

**18.** Pub.L. No. 93–502, 88 Stat. 1561 (Nov. 21, 1974) (amending 5 U.S.C. § 552).

against a party other than an agency only if—

> (i) it has been indexed and either made available or published as provided by this paragraph; or
> (ii) the party has actual and timely notice of the terms thereof.

5 U.S.C. § 552(a)(2) (emphasis supplied). Since Cervase's amended complaint was not filed, we do not know whether it sought relief against any other agencies for failure to comply with the statute quoted above. But Cervase did argue that § 1510(b) should be construed in pari materia with the Freedom of Information Act. That Act reaffirmed Congress' commitment to the principle of meaningful public access, by means of indexing, to records of agency action.

## II

The government urges that under the Federal Register Act the Administrative Committee of the Federal Register is authorized to prescribe regulations providing for the manner and form in which the Federal Register shall be printed, compiled, indexed, bound, and distributed,[19] and that therefore the Committee's action is discretionary and beyond judicial review. Apparently the district court, in its cryptic reference to mandamus, accepted this argument. However, we believe that this argument is defective for several reasons.

■ Even assuming for the moment that a writ of mandamus was not available to Cervase, we think that the district court erred in dismissing the complaint. As mentioned earlier, the court refused to consider a tendered amendment which, judging from the information in the brief transcript which is available, would have added the Director of the Office of Federal Register as a party defendant. We do not know what else the proposed amended complaint would have stated since the district court refused to permit that amendment to be filed. We do know, however, that under 28 U.S.C. § 1331(a) there clearly was subject matter jurisdiction in the district court, re-

gardless of the amount in controversy, over a complaint against the United States, any agency thereof, or any officer or employee thereof sued in his official capacity. Cervase's original complaint invoked jurisdiction under the mandamus statute, 28 U.S.C. § 1361, and sought a direction that the defendant prepare and publish an index in conformance with the statute. If the complaint had instead invoked jurisdiction under § 1331(a) and had otherwise stated a cause of action, the identical relief would have been available by way either of an injunction or perhaps of a declaratory judgment. 28 U.S.C. § 1653 states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Mindful of this admonition, we think that even if the district court had correctly concluded that mandamus would not lie, that court was obliged to examine the tendered amendment to see if it stated a claim cognizable under § 1331(a). The district court's failure to consider the amended complaint submitted by Cervase exceeded all bounds of permissible discretion. Since that amendment was not received, we do not know what was alleged respecting subject matter jurisdiction. But since such jurisdiction plainly does exist under § 1331(a), we will examine the pleading as if it had relied on both § 1361 and § 1331(a).

■ Certainly Cervase's complaint states a cause of action cognizable under § 1331(a). The regulations promulgated by the Administrative Committee impose an indexing obligation on the Office of the Federal Register. Although the regulations do not define the term "index," the Committee clearly intended that the word have its ordinarily understood meaning. Secondly, had the Committee attempted, by regulation, to define "index" to be something different than its ordinarily understood meaning, we would be faced with the question whether, in granting the rule-making authority found in 44 U.S.C. § 1506, Congress intended to place such rules beyond judicial review. *See* 5 U.S.C. §§ 704 and

---

19. 44 U.S.C. § 1506(3).

706. But such a construction would fly in the face of the fundamental purpose of the Federal Register Act—to eliminate the problem of secret law.[20] In our opinion, the Administrative Procedure Act provides aggrieved persons with an avenue for judicial review of the committee's regulations.

■ More fundamentally, even if Cervase's complaint is read to invoke jurisdiction only under § 1361, that complaint does state a claim for relief. Cervase does not complain about the regulations which deal with the manner and form in which the indices shall be prepared and distributed. Rather, he complains that the Director of the Office of Federal Register is not following those regulations. Certainly that ministerial office has no discretion to disregard them. It is his inaction for which judicial intervention is sought. Mandamus will lie to compel the Director to follow the administrative regulations. *See Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers,* 520 F.2d 11, 26–27 (3d Cir. 1975).

■ The government also urged successfully in the district court that the Office of Federal Register could not be sued in its agency name. As we noted above, the district court refused to permit Cervase to file an amendment naming the Director as a party defendant. Whatever might have been said for the learning on federal sovereign immunity and on the status of federal agencies or officials as parties prior to 1976, that learning became obsolete with the passage of the Judicial Review Act.[21] This new statute amended 5 U.S.C. § 702 to provide for a general waiver of sovereign immunity whenever non-monetary relief is sought. In addition, it amended 28 U.S.C. § 1331(a) to provide for jurisdiction in the district courts over such actions without regard to the amount in controversy. The legislative history of Pub.L. No. 94–574 demonstrates that Congress intended both to eliminate sovereign immunity as a bar to judicial review of agency actions and to prevent the United States from raising technical objections to the parties named as defendants. Thus, even if Cervase had not submitted the amended complaint, the district court erred in dismissing the action. In fact, the suit could simply have proceeded against the United States, which would have been represented by the United States Attorney. House Report No. 94–1656 puts the issue nicely in focus:

The size and complexity of the Federal Government, coupled with the intricate and technical law concerning official capacity and parties defendant, has given rise to numerous cases in which a plaintiff's claim has been dismissed because the wrong defendant was named or served.

Nor is the current practice of naming the head of an agency as defendant always an accurate description of the actual parties involved in a dispute. Rather, this practice often leads to delay and technical deficiencies in suits for judicial review.

The unsatisfactory state of the law of parties defendant has been recognized for some time and several attempts have been made by Congress to cure the deficiencies.

Despite these attempts, problems persist involving parties defendant in actions for judicial review. In the committee's view the ends of justice are not served when government attorneys advance highly technical rules in order to prevent a determination on the merits of what may be just claims.

[1976] U.S.Code Cong. & Admin.News pp. 6137–38 (94th Cong., 2d Sess.) (footnotes omitted). The district court's conclusion that the Office was not a suable entity was wholly inconsistent with the letter and spirit of the Judicial Review Act.

20. *See generally* Griswold, *Government in Ignorance of Law—A Plea for Better Publication of Executive Legislation,* 48 Harv.L.Rev. 198 (1934). The Act was passed in the aftermath of the Supreme Court's decision in *Panama Refining Co. v. Ryan,* 293 U.S. 388, 432–33, 55 S.Ct. 241, 79 L.Ed. 446 (1935), that an administrative or executive order based upon a factual determination must contain an express statement of the necessary finding.

21. Pub.L. No. 94–574, 90 Stat. 2721 (Oct. 21, 1976).

Nor do we have any difficulty in concluding that the district court erred in finding that Cervase lacked standing to challenge the agency inaction. The Federal Register Act was intended to confer upon the general public rights of access to agency rulings which had previously been inaccessible. A practicing attorney, who by virtue of his profession must advise others about their legal rights, is more than "arguably within the zone of interests to be protected . . . by the statute . . . in question." *Ass'n of Data Processing Serv. Org., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Moreover, he would appear to be peculiarly favorably situated to establish that, because of the inability to retrieve information from the Federal Register which he alleges, he is aggrieved by the agency's inaction. *See Planned Parenthood v. Danforth,* 428 U.S. 52, 62, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 688–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In reviewing a Rule 12(c) judgment on the pleadings, we must accept as true Cervase's allegation that his inability to advise his clients arises from the failure of the Office of Federal Register to provide an index in compliance with that which the Federal Register Act mandates. We believe that Cervase has satisfied the requirements of standing and that therefore the case should be decided on the merits.

### III

The judgment appealed from will be reversed and the case remanded to the district court for proceedings consistent with this opinion.

GARTH, Circuit Judge, dissenting.

On May 18, 1976, John Cervase, an attorney admitted to practice law in the State of New Jersey in 1929,[1] filed an action *pro se* in the federal district court in New Jersey. He sought a writ of mandamus under 28 U.S.C. § 1361 directing the Office of the Federal Register (OFR) to "prepare and publish an analytical subject index to the Code of Federal Regulations [C.F.R.]." His complaint in its entirety reads as follows:

### Complaint for Mandamus

1. The jurisdiction of the Court is invoked under 28 U.S.C. 1361.

2. Plaintiff is a citizen of the United States and the State of New Jersey, and a practicing lawyer.

3. Defendant is an agency of the United States. It is part of the National Archives and Records Service which is part of the General Services Administration.

4. The Code of Federal Regulations is a 120 volume set of regulations which have been made by federal departments and agencies. These regulations establish legal relations between the United States Government and the people.

5. Under 44 USC 1510(b & d), Defendant owes a duty to the Plaintiff and to the people at large to prepare and publish an analytical subject index to the Code of Federal Regulations.

6. Defendant has breached this duty by preparing and printing a 164 page index to the entire 120 volume Code of Federal Regulations. This index does not meet the standards of 44 USC 1510(b & d) or the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

7. This breach of duty has injured Plaintiff and the people at large by making it almost impossible for them to know the federal regulations which apply to them.

WHEREFORE, Plaintiff prays for:

1. A mandamus directing Defendant to:

(a) Prepare and publish an analytical subject index to the Code of Federal Regulations before December 31, 1976;

(b) File in this Court before June 30, 1976 a detailed plan for achieving this goal;

---

1. New Jersey Lawyers Diary and Manual 608 (1978).

(c) File in this Court before October 31, 1976 the final draft of the index.

2. An order directing Defendant to pay to Plaintiff all costs and reasonable attorneys' fees;

3. All other relief which the Court may deem just and proper.

/s/

John Cervase

Counselor at Law

. . .

Pro Se

The record reveals that after the Government had filed its answer to the complaint, Cervase moved on October 8, 1976 for summary judgment. That motion, to which the Government responded by brief, was denied on November 3, 1976 by the district court.

The following day, November 4, 1976, the Government filed its motion for judgment of dismissal on the pleadings. This motion, which relied upon a brief previously submitted in opposition to Cervase's summary judgment motion, was served upon Cervase on November 3, 1976. Despite knowledge of the grounds on which the Government was relying, Cervase stood on his original mandamus complaint.

The Government's motion was initially scheduled to be heard on November 22, 1976, but was apparently rescheduled for hearing on December 13, 1976.

Then, for the first time, without having filed any motion to amend his complaint, Cervase proposed an amendment "adding the Director of the Office of the Federal Register as a defendant in the case."[2] Despite his having been put on notice at least as early as November 3rd[3] that the Government would attack the jurisdictional basis of his action, Cervase at no time ever stated that he sought to amend the jurisdictional basis of his action. Nor did he at any time indicate any intent to rely upon 28 U.S.C. § 1331(a) (federal question jurisdiction).

The district court, having no motion before it to amend the complaint and only Cervase's statement that he had "prepared an amendment to the complaint . . . adding the Director of the Office of the Federal Register as a defendant in the case," denied Cervase's oral application, inasmuch as just prior to Cervase having made his "amendment" application, there had been a ruling in favor of the Government which had dismissed Cervase's complaint.

The district court based its ruling on "at least" three grounds:

1. A writ of mandamus will not lie to enforce a provision such as 44 United States Code § 1510. See, generally, *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11 (3d Cir. 1975).

As a second reason, the Office of Federal Register is not a suable entity.

And, finally, the plaintiff does not meet the required tests of standing to sue under relevant case law. (See, generally, *Warth v. Seldin,* 422 U.S. 490 [95 S.Ct. 2197, 45 L.Ed.2d 343] (1975).[4]

Notwithstanding that the district court was clearly correct in dismissing Cervase's complaint, the majority opinion would reverse that judgment and reinstate Cervase's complaint, but in a new guise.

Cervase, as is undisputedly evident, alleged jurisdiction solely under section 1361, as he sought only a writ of mandamus which would result in a direction to OFR. At no time did Cervase assert or even intimate that he was interested in any other jurisdictional predicate—and for good reason. First, the manner in which his complaint is framed speaks peculiarly to mandamus. Second, the relief sought by Cervase is peculiarly available only through mandamus. To substitute federal question jurisdiction under section 1331(a) in his complaint not only would require a com-

---

2. Transcript of Hearing at 3.

3. The Government's answer filed in August, 1976, listed as affirmative defenses: a lack of subject matter jurisdiction; a failure to state a

claim; failure to join an indispensible party; and a lack of standing.

4. Transcript of Hearing at 2.

plete restructure of its form and substance to incorporate injunctive and declaratory judgment allegations, but it would also require a vastly different form of relief than that either desired or sought by the complainant.

Yet the majority, ignoring the very pleading prepared by Cervase which expressly and unequivocally seeks mandamus, adds a gloss to his complaint by stating: "since such jurisdiction plainly does exist under § 1331(a), we will examine the pleading as if it had relied on both § 1361 and 1331(a)." Maj.Op. at 1170.

My disagreement with the majority therefore rests on two grounds. First, I believe, and I am convinced that the majority also believes, that the district court correctly ruled that mandamus is not available to redress Cervase's grievance. Second, I believe that having so ruled, and ruled correctly, the district court was under no obligation to solicit an amendment alleging § 1331(a) jurisdiction, to instruct Cervase, a practicing lawyer, in the rudiments of federal jurisdiction, or to restructure his legal theory or to "redraft" his complaint. The thrust of the majority opinion would require that result. Because I believe that district court judges are heavily burdened as is and should not be made to assume the tasks that are peculiarly those of the Bar, I cannot agree with the holding of the majority which must inevitably lead to imposing this unwarranted burden on our trial courts. I therefore dissent.

**5.** Section 1510 of 44 U.S.C. provides in relevant part:

   (b) A codification published under subsection (a) of this section shall be printed and bound in permanent form and shall be designated as the "Code of Federal Regulations." The Administrative Committee shall regulate the binding of the printed codifications into separate books with a view to practical usefulness and economical manufacture. Each book shall contain an explanation of its coverage and other aids to users that the Administrative Committee may require. A *general index* to the entire Code of Federal Regulations shall be *separately printed and bound.*

   . . . .

   (d) The Office of the Federal Register shall prepare and publish the codifications, supplements, collations, and indexes authorized by this section.
(Emphasis added).

*Mandamus*

In our Circuit a writ of mandamus will not issue to achieve what Cervase seeks: a rewrite of the index to the Code of Federal Regulations. Rather, "[f]or a petition to state a claim upon which mandamus relief may be granted, it is imperative that the petitioner allege that the government owes the petitioner the performance of a legal duty *'so plainly prescribed* as to be free from doubt.'" *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 25 (3d Cir. 1975) (emphasis added). In short the duty must be the performance of a ministerial act—one that does not require discretion.

Here, the applicable statutes and regulations prescribe that the OFR provide only a "separately published" "annually revised" "general" "subject index." 44 U.S.C. §§ 1510(b), (d); 1 C.F.R. § 8.4 (1977).[5] This, even Cervase would acknowledge,[6] the OFR has plainly provided.[7] Thus mandamus will not lie here.

Congress, as acknowledged, has prescribed a "general" "subject" index.[8] That index has been prepared and furnished by the OFR. This circumstance alone would defeat a mandamus action. Cervase, however, dissatisfied with the utility of a general subject index, seeks more. He seeks not just a *general* index but rather a particular type of index: an *analytical subject matter*

1 C.F.R. § 8.4 reads:
   Indexes.
   A *subject index* to the entire Code [of Federal Regulations] shall be *annually revised* and *separately published.* An agency-prepared index for any individual book may be published with the approval of the Director of the Federal Register.
(Emphasis added).

**6.** *See* Brief for Appellant at 2–5.

**7.** *See* C.F.R. Index (Revised as of July 1, 1976). *See also* C.F.R. Finding Aids (Revised as of January 1, 1976).

**8.** Cervase "concedes that the words 'analytical subject index' do not appear in 44 USC 1510." Appellant's Reply Brief at 2.

index which Congress has not seen fit to require. Perhaps if Congress had specified a particular identifiable type of index, and the OFR failed to provide that particular index, Cervase's argument might succeed. *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d at 26–27. Here however Congress has required no more than a general subject index, one which obviously may take many forms and still satisfy the congressional mandate. Further, the selection of the particular form which the index may take (beyond the specified congressional requirements, *see* 44 U.S.C. § 1510(b); 1 C.F.R. § 8.4) has been left by Congress to the OFR's discretion. *See* 44 U.S.C. § 1510(d). The exercise of that discretion is the antithesis of the performance of a ministerial act, the *sine qua non* for an action in mandamus. Hence the essential predicate for mandamus is lacking. *See Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d at 25. Without question, the district court, citing to this precise authority (*Flood*) correctly held that mandamus would not lie, and therefore dismissed Cervase's suit.

Aware of this basic mandamus principle,[9] Cervase framed his argument not in terms of what the actual statutes require [10] but in terms of how he interprets them. His argument may be summarized as:

(1) the appropriate statutes and regulations governing the C.F.R. index actually require not a "general" "subject index" *as they state* but rather an "analytical subject index";

(2) the C.F.R. index is not an "analytical subject index"; and

---

9. In Appellant's Reply Brief at 3, Cervase "concedes that a federal agency is not liable for a mandamus if it merely failed to perform a discretionary duty."

10. *See* n.8 *supra.*

11. Cervase argues that the C.F.R. Index as presently devised violates the fifth amendment standards of due process and equal protection. Appellant's Brief at 10–11. Even if he is right, that contention cannot be vindicated by means of mandamus.

(3) therefore the OFR has ignored its own regulations, a transgression which is remediable by a writ of mandamus.

In actuality however Cervase's contention that the C.F.R. index is inadequate and unconstitutional [11] is no more than an interpretation by him of the legislative history which gave rise to the statute and the regulations. He supplements that interpretation by contending that because Congress intended an *effective* C.F.R. index, and further because only an "analytical subject index" is effective, Congress must have intended that the OFR provide an analytical C.F.R. subject index, even though 44 U.S.C. § 1510 explicitly prescribes that the OFR provide no more than a *"general index."*

Whatever may be said with respect to the merits of Cervase's argument (and I too sympathize with his difficulty in having to make do with an inadequate index), neither his complaint, nor the relief it seeks, can be described as that which seeks "the performance of a legal duty 'so plainly prescribed as to be free from doubt.'" *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d at 25. Rather, in all fairness it can only be characterized as a "complain[t] about the regulations which deal with the manner and form in which the indices shall be prepared and distributed," Maj.Op. at 1171 a complaint which the majority implicitly concedes is *not* remediable by mandamus.[12] Indeed the majority, quite aware of the relevant statutes and regulations and also recognizing the controlling principles, was obliged to fall back on the shibboleth that what Cer-

---

12. I acknowledge that certain commentators have decried limiting mandamus jurisdiction only to complaints which allege violations of "plainly prescribed" duties. *See, e. g.,* Byse & Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "NonStatutory" Judicial Review of Federal Administrative Action,* 81 Harv.L.Rev. 308 (1967). Whereas this criticism may have once been justified, now that other bases of jurisdiction exist to remedy transgressions by federal officials, *e. g.,* 28 U.S.C. § 1331, I see no purpose in rewriting the law of mandamus to create a second general reservoir of federal question jurisdiction.

vase sought was no more than a direction that the OFR follow its own regulations. *Id.* at 1170–1171. Certainly if that was all that was at issue, I would agree, and I can safely assume the district court would have agreed, that mandamus would lie to compel compliance with one's own rules. *See Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d at 26–27. The difficulty with this approach however is that OFR *has* followed its own regulations—but those regulations require no more than the publication of a "general" "subject index" in the manner and form determined by OFR and not by Cervase or by any other person or entity.

The majority's unfortunate introduction into this proceeding of the requirements mandated for an index pertaining to the *Federal Register,* which are separate and apart from the requirements prescribed for the index to the Code of Federal Regulations, has obscured if not confused the issues before us. *See* Maj.Op. at 1168–1169 & n.15. The Federal Register, as distinct from the Code of Federal Regulations, is a daily log of regulations which are ultimately codified in the Code of Federal Regulations. 1 C.F.R. § 5.5 (1977) (Federal Register); *id.* §§ 8.1, 8.2 (Code of Federal Regulations). The Code and the Register are dealt with separately insofar as their respective indices are concerned. The regulations pertaining to the *Federal Register* prescribe that its indices shall be "analytical subject indexes." 1 C.F.R. § 6.2. On the other hand, the regulations pertaining to the *Code of Federal Regulations* prescribe that its index shall be only a "subject index". *Id.* at § 8.4. Inasmuch as the OFR properly complied with those regulations prescribing a *subject* index for C.F.R., no transgression has occurred which can be remedied by mandamus.[13] Thus it is obvious that jurisdiction to grant Cervase the remedy he seeks is not available through a writ of mandamus, and that the district court was clearly correct in so ruling.

### 28 U.S.C. § 1331(a)

As the majority acknowledges, Cervase did not assert jurisdiction under 28 U.S.C. § 1331(a). Nor did he in any way indicate that his proposed amendment to the complaint even referred to that fount of jurisdiction. *See* Transcript of Hearing at 2–3; Appellant's Reply Brief at 7–8.[14] Indeed we can rightfully assume the contrary, for while Cervase adverted to the addition of a defendant as the reason for his amendment, he at no time alluded to the addition of section 1331 as a basis of jurisdiction.[15] Moreover, we do not know whether the jurisdictional choice made by Cervase was inadvertent or tactical.[16] We do know however that Cervase is an active attorney who *as plaintiff* has instituted no less than seven actions in the District Court of New Jersey alone,[17] at least two of which sought a writ

---

**13.** I hasten to state that I have not addressed myself to the merits of whether or not the distinction between types of indices is a wise one, for I do not believe it is within our province to make this determination. Nor do I disagree with the discussion of the majority that the CFR index may be inadequate, and that it would be far better in all instances to have the most effective index possible. Once again I am forced to say that that issue is not before us.

**14.** There Cervase stated:
  Under FRCP 15, leave to amend a technical defect in a complaint should be freely granted. Wright, *Fed.Pra. and Prc.* Sec. 1471 and following. Here, Judge Stern abused his discretion by denying Plaintiff leave to amend the complaint *to include the Director of Defendant.* At most, the omission was a technicality which Rule 15 was designed to correct.

  (Emphasis added.)

**15.** Appellant's Reply Brief at 7–8.

**16.** For example Cervase may have anticipated gaining a substantive advantage by phrasing the relief which he sought in terms of the "mandatory" "ministerial duty" remediable by a writ of mandamus. He was obviously aware that these concepts define the proper scope for issuance of the writ. *See* p. 6 *supra.*

**17.** *Cervase v. Newark Teachers Union, Local 481,* No. 70–228; *Cervase v. EEOC,* No. 76–575 (civil rights case); *Cervase v. Office of Federal Register,* No. 76–924 (the subject of the instant appeal); *Cervase v. Architect of the Capitol,* No. 76–1164 (see n.18 *infra* ); *Cervase v. Department of State,* No. 76–2338 (Freedom of Information Act case); *Cervase v. Richard E. Wiley,* No. 76–2443; *Cervase v. Benjamin F. Bailar,* No. 77–39.

of mandamus.[18] To this extent we are entitled to credit him, as did the district court, with knowledge of the basics of federal jurisdiction and procedure.

The rules that govern federal district court proceedings mandate among other requirements that a party's pleading state "the grounds upon which the court's jurisdiction depends." Fed.R.Civ.P. 8(a).[19] While I acknowledge that in stating "the grounds upon which the court's jurisdiction depends" a plaintiff may err and state it incorrectly, it is a giant step to hold as the majority does, that the district court judge was "obliged to examine the tendered amendment to see if it stated a claim cognizable under section 1331(a)." Maj.Op. at 1170.

First we must recognize that in this case there was no "tendered amendment" which even suggested a reference to section 1331(a).[20] Despite the absence of any such proposed amendment annexed to a motion to amend (neither of which was ever filed or submitted), the majority would nevertheless require such a non-existent amendment to be examined and, from the thrust of the majority opinion, also to be structured by the court to accommodate the injunctive and declaratory allegations and relief which would be the concomitant of such a § 1331 complaint. See Maj.Op. at 1170–1171.

It must be obvious that any amendment based on 1331 jurisdiction would create a vastly different complaint than the mandamus complaint on which the court ruled.[21] It must also be obvious that Judge Stern's

dismissal of Cervase's mandamus complaint did not preclude Cervase from drafting and filing a new complaint incorporating the essential allegations supporting federal question jurisdiction—allegations necessarily different in substance and form from those asserted in his complaint in mandamus.

Hence I can only read the majority's holding as one which would require the district court (1) to invite an amendment from the plaintiff who theretofore had not seen fit to amend his complaint despite notice of its alleged deficiencies; and (2) (once having received the amendment if in fact the plaintiff does move to amend), to examine the amendment to ascertain the possibility of a claim cognizable under a different branch of federal jurisdiction. Inasmuch as the form of such a complaint would differ substantially from the form of a mandamus complaint, I would suppose that the district court would be obliged as well to either instruct the plaintiff in the intricacies of pleading injunctive and declaratory claims, or to restructure the "invited" amendment itself.

In either event it is apparent that whatever is revealed by Cervase's amended complaint (which to this day has yet to be submitted), it is not *that* complaint to which the defendant's motion is addressed. Nevertheless, the majority has held that the district court's failure to consider such an undrafted, unfiled, unarticulated "amended complaint" (one which may never see the

---

**18.** These two actions include the instant case and *Cervase v. Architect of the Capitol & Congressional Black Caucus, Inc.,* No. 77–1164 (D.N.J. Dec. 13, 1976) (unpublished) (dismissed "a Writ of Mandamus to evict the Congressional Black Caucus from the rooms which they now occupy in the House Office Building" (Transcript of Hearing at 4)).

**19.** That provision reads in full:

(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim

needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

**20.** *See* Transcript of Hearing at 2–3; Appellant's Reply Brief at 7–8.

**21.** *I. e.,* different substantive allegations would be required; different kinds of relief would have to be defined and sought; different defendants might well have to be named.

light of day) "exceeded all bounds of permissible discretion." Maj.Op. at 1170. In so ruling the majority has diverted its attention from the very matter it has been called upon to review: the motion which was before the district court in the form of a proper articulated pleading seeking a dismissal of the only complaint that has ever been filed. Can the majority realistically hold that the district court abused its discretion in granting the Government's motion under such circumstances, particularly when even Cervase in his appellate briefs has *never* so charged?[22] To hold therefore that Judge Stern has "exceeded all bounds of permissible discretion" by failing to consider an "amended" complaint which was never sought or submitted by the plaintiff, which was never the subject of a ruling by the court, and which the plaintiff has never complained of on appeal, strikes me as exceeding all permissible bounds of review.

The majority cites no statute, regulation or decisional law which vests in the district court an obligation to invite and to examine jurisdictional amendments to deficient complaints. I also can find none.[23] Nor is there any basis in logic, policy or practice for imposing such a duty. Instead, (1) where, as here, the plaintiff has had ample notice of a jurisdictional problem; and (2) where, without seeking to cure the jurisdictional defect by motion or otherwise, the plaintiff has stood on his complaint seeking only to add another defendant; and (3) where the district court has no motion to amend the complaint before it, and only a motion by the defendant to dismiss for lack of subject matter jurisdiction; and (4) where the district court then rules correctly on the principal and threshold issue presented—that of jurisdiction[24]—and (5) where the plaintiff does not assert before us any abuse of discretion by the district court relating to any purported jurisdictional amendment to his pleadings, I believe it to be a gross abuse of the function of appellate review to reverse the district court judge's obviously correct ruling.

Had the *only* ruling on Cervase's pleadings been to deny him the right to add another defendant, I undoubtedly would have agreed with the majority that the district court abused its discretion in not permitting the complaint to be amended to add the Director of the OFR as a defendant. However if that had been the only deficiency in Cervase's pleadings, there is no question in my mind but that distinguished district court judge would have properly exercised his discretion and would have permitted such an amendment. As I have pointed out however, faced with a complaint which was tailored explicitly and unequivocally for mandamus relief, there was no basis for District Judge Stern to rule other than as he did.

The majority's action would have been much more comprehensible to me had the

---

**22.** At no time in the district court or on appeal has Cervase ever claimed that the district court improperly exercised its discretion in refusing to permit or to examine any jurisdictional amendment. Indeed, Cervase's Reply Brief only complains about the district court's refusal to permit his amendment which would have added a defendant. *See* n.14 *supra.*

**23.** Unlike the majority, *see* Maj.Op. at 1170, I read 28 U.S.C. § 1653 to stand for the proposition that *a party's attempt* to cure a jurisdictional defect should be liberally allowed. Indeed, I know of no court other than the majority today which has read this or any other statute to impose an obligation on a district court judge to take over a party's pleading and in effect to restructure a party's theory of litigation.

**24.** Our court has frequently held that the first question that must be determined by a federal

court is that of jurisdiction. *E. g., Brace v. O'Neill,* 567 F.2d 237, 239 n.2 (3d Cir. 1977); *see In re Grand Jury Proceedings (U. S. Steel-Clairton Works),* 525 F.2d 151, 154 (3d Cir. 1975). Once having found that jurisdiction is absent, the court must go no further. Therefore I need not address myself to the two other issues raised by the defendant in its motion to dismiss and which were ruled upon by Judge Stern. I observe however that at the time Cervase brought his action (May, 1976), no suit could have been instituted against OFR, the only defendant named. As the majority correctly indicates, Pub.L. No. 94-574 did not become effective until October, 1976. Hence on the unamended pleadings it is arguable that the district court did not err in stating that "the Office of the Federal Register is not a suable entity." Transcript of Hearing at 2.

complaint been framed for other than mandamus relief, or if Cervase had been the garden-variety *pro se* litigant—one without a law degree and who was not a member of the Bar.[25] The majority however does not restrict its holding. Rather the majority has adopted a broad, pervasive principle imposing an obligation upon the district court, when a complaint in mandamus is deficient, to "examine" a yet-to-be-drawn purported amendment to that complaint [26] "to see if it state[s] a claim cognizable under" some other jurisdictional basis, and presumably, if it does, to require the necessary restructure of the pleading.

Because I am satisfied beyond question that the district court ruled correctly in dismissing Cervase's complaint—the only matter that was before that court—I am obliged to dissent from the majority's holding. My distress with that holding is even more pronounced because the majority has reached out unnecessarily to impose an unwise duty of ombudsmanship on the district court. If the majority's "oblig[ation]" requirement is sustained, district court judges must henceforth assume the role of both advocate and judge, a dual role which is obviously incompatible with and which undermines the very structure of our jurisprudence.

I would affirm Judge Stern's order which dismisses Cervase's complaint—the only order before us to be reviewed.

**25.** We have become accustomed to dealing differently, and more liberally, with litigants who appear *pro se. Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'"), *quoting Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**26.** So far as we can ascertain in this case the plaintiff has had no inclination or intention to amend his complaint in any jurisdictional particular.